UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDREW BAKER, ET AL.                    CIVIL ACTION

VERSUS                                  NO: 08-1303

ST. BERNARD PARISH COUNCIL              SECTION: "R"(3)

## ORDER AND REASONS

Before the Court is plaintiffs' motion for sanctions for violations of the Consent Temporary Restraining Order.  For the following reasons, the Court GRANTS IN PART and DENIES IN PART plaintiffs' motion.

## I.  BACKGROUND

On March 17, 2008, plaintiffs sued the St. Bernard Parish Council, seeking injunctive relief, a declaratory judgment, and damages.[1]  Plaintiffs allege that St. Bernard Parish Council Ordinance #697-12-06 constitutes a takings without just compensation, that it violates plaintiffs' Fourteenth Amendment due process rights, and that it violates the dormant Commerce

---

[1] The original plaintiffs are Andrew Baker, Chad Baker, Robert Baker, Turpin Barrett III, Dan Brenneman, Rodney Brenneman, Jesse Chase, David Choate, Michael Dean, Homer Duff, Ike Fountain, Ken Fountain, Janice Haitfield, John Huckeba, Mike Johnson, Kimberly Knaisch, John Lake, Robert Sampson, Joe Stagman, Greg Tapp, Fred Vogler, Michael Wambach, Vickie Wambach, James Welch, Kevin Wing, Your Home Solution Louisiana, LLC, and Your Home Solution Management, LLC.

Clause.  Plaintiffs' requested relief includes a preliminary and permanent injunction enjoining the St. Bernard Parish Council from enforcing the Ordinance.

Shortly after filing suit, on April 3, 2008, plaintiffs moved for a temporary restraining order (TRO) and reiterated their prayer for a preliminary injunction. (R. Doc. 5.)  The Court entered a Consent TRO that same day.  The TRO stated, in pertinent part:

> IT IS ORDERED THAT A Temporary Restraining Order issue herein and that the St. Bernard Parish Council is prohibited and restrained from enforcing or implementing against Complainants an ordinance passed on December 19, 2006, known as Ordinance #697-12-06 ("Ordinance 12-06"), requiring property owners wishing to rent, lease, or lease-to-own properties to first obtain a "Permissive Use Permit" from the St. Bernard Parish Council from taking steps against Complainants to enforce Ordinance 12-06 by ordering "all utility service [to be] disconnected" from the tenants occupying houses owned by Complainants.

(Consent TRO, R. Doc. 6.)

On April 17, 2008, plaintiffs filed a motion for civil contempt and sanctions against St. Bernard, alleging a variety of actions by defendant and its employees in violation of the TRO's constraints. (R. Doc. 10.)  The motion seeks, among other things, for the Court to impose a fine of $250,000.00 on St. Bernard Parish for various alleged acts the Parish and its representatives committed in violation of the TRO.  The acts included a variety of ostensible violations ranging from the posting of Notices of Violation at various residences after April

3, 2008 threatening utility disconnection, to more severe actions implying utility holds and racism, although not all allegations clearly demonstrated a nexus with the enforcement or threatened enforcement of Ordinance 12-06 in violation of the TRO, or were necessarily made by plaintiffs or their tenants.  On May 21, 2008, plaintiffs proffered as further support for sanctions the affidavits of a number of St. Bernard Parish residents.

On May 27, 2008, defendant filed an opposition to plaintiff's motion.  In it, St. Bernard stipulates that it did violate the TRO.  Defendant admits that it erroneously issued Notices of Violation of Ordinance 12-06 threatening utility holds to nine homes in Chalmette, Louisiana between April 4, 2008 and April 11, 2008.  Defendant states it learned of its acts in violation of the TRO on April 17, 2008 and hand-delivered notices to the nine properties involved on the following day.  Certified letters of apology were also mailed to those nine addresses. Defendant contests plaintiffs' other allegations of violations of the TRO.  On June 3, 2008, the Court held a preliminary injunction hearing and also heard oral argument on plaintiffs' motion for sanctions.

## II.  LEGAL STANDARD

In *American Airlines v. Allied Pilots Association*, 228 F.3d 574 (5th Cir. 2000), the Fifth Circuit outlined a test for

3

proving civil contempt of court: "A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Id.* at 581 (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)).

Although defendant avers that "implicit" in the Supreme Court's opinion in *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991), was that courts typically look to see if there has been bad faith conduct before imposing sanctions, the Fifth Circuit has held that the "contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *American Airlines*, 228 F.3d at 581; *see also N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984) (finding that in civil contempt proceedings, "the only issue is the Company's actual compliance with this Court's orders; any absence of willfulness is irrelevant"). As explained by the Supreme Court in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949), "[s]ince the purpose is remedial, it matters not with what intent the defendant did the prohibited act. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. ... An Act does not cease to be a violation of a law and of a decree merely because it may have

4

been done innocently." Accordingly, the Court finds that plaintiffs' burden is to produce clear and convincing evidence that defendant violated the Court's order after it was entered.

**III. DISCUSSION**

The Consent TRO was implemented on April 3, 2008. (Consent TRO, R. Doc. 6.) The TRO barred St. Bernard Parish from enforcing Ordinance 12-06, and it specifically prohibited the Parish from enforcing the Ordinance by means of threatening to disconnect the utilities of "tenants occupying houses owned by Complainants." (*Id.*) Therefore a court order was undoubtedly in effect, and prohibited certain conduct by defendant. With respect to the third prong of the *American Airlines* test, plaintiffs allege violations of the TRO by defendant where, among other things, Notices of Violation of Ordinance 12-06 were improperly communicated to nine addresses in Chalmette, St. Bernard Parish after the April 3, 2008 TRO was in place.

   *1. Violations of the TRO*

Defendant's admission that it violated the TRO between April 4 and April 11, 2008, even if erroneously and not willfully, meets the *American Airlines* test, as it serves as clear and convincing evidence corroborating plaintiffs' allegations that defendant violated the TRO when it served a "Notice of Violation" on the following nine locations:

5

(1) David Choate's property located at 3516 Dauterive Street, Chalmette, Louisiana 70043 (*see also* R. Brenneman Aff., R. Doc. 33-4, ¶ 26) (noting that Shermaine Berthelemy, tenant at the property, received a Notice of Violation on April 16, 2008, which Notice threatened to disconnect her utilities in 30 days)[2];

(2) Dan Brenneman's property located at 3616 Gallo Drive, Chalmette, Louisiana 70043 (*see also* R. Brenneman Aff. ¶ 28) (noting that Leila Benumb, tenant at the property, received a certified letter containing a Notice of Violation on April 6, 2008, and that a government official handed her another Notice on April 7, 2008);

(3) Dan Brenneman's property located at 3313 Blanchard Street, Chalmette, Louisiana 70043 (*see also* R. Brenneman Aff. ¶ 29) (noting that Daphne Clark, tenant at the property, received a Notice of Violation on April 4, 2008, which was personally posted at the property by Addison Thompson, the assistant Chief Accounting Officer for St. Bernard Parish);

(4) Joe Stagman's property located at 3120 Legend Street, Chalmette, Louisiana 70043 (*see also* R. Brenneman Aff. ¶ 30);

(5) Michael and Vickie Wambach's property located at 8304

---

[2] Rodney Brenneman is a managing member of Your Home Solutions, Louisiana, LLC and contends that his affidavit is based on personal knowledge of the books and records of Your Home Solutions, Louisiana, LLC and Your Home Solution Management, LLC. As there is no affidavit from Berthelemy, nor has either party attached the Notice of Violation, the Court cannot confirm that the tenant received the Notice of Violation on April 16, 2008.

Saber Street, Chalmette, Louisiana 70043 (*see also* R. Brenneman Aff. ¶ 31) (tenant received a Notice of Violation threatening to disconnect her utilities in 30 days on April 9, 2008);

(6) Robert Sampson's property located at 3221 Pecan Drive, Chalmette, Louisiana 70043 (*see also* R. Brenneman Aff. ¶ 33) (noting that tenant received a "Notice of Violation by certified mail on April 6, 2008, which had been sent on April 4, 2008, and that someone delivered to him another notice on April 8, 2008);

(7) Dan Brenneman's property located at 3216 Volpi Drive, Chalmette, Louisiana 70043 (*see also* R. Brenneman Aff. ¶ 35) (Notice of Violation taped to tenant's door allegedly by St. Bernard Parish representative John Walsh threatening to disconnect her utilities in 30 days);

(8) Chad Baker's property located at 3008 Compagna Drive, Chalmette, Louisiana 70043 (*see also* R. Brenneman Aff. ¶ 36) (tenant received a Notice of Violation by certified mail on April 6, 2008 that had been sent on April 4, 2008 threatening to disconnect her utilities in 30 days); and

(9) Chad Baker's property located at 3408 Blanchard Street, Chalmette, Louisiana 70043 (*see also* R. Brenneman Aff. ¶ 37) (St. Bernard Parish representative John Walsh allegedly taped a Notice of Violation to the property's door on April 11, 2008, which Notice threatened to disconnect the tenant's utilities in 30 days).

Although defendant contends that these Notices of Violation were "in the works" before the entry of the TRO, it does not contest that Parish officials were hand-delivering some Notices of Violation after the imposition of the TRO and in violation of its terms.  The Parish further admits that these Notices of Violation were being issued more than a week after the TRO was entered.

### 2.   Non-Violations of the TRO

Other than these nine violations, the Court does not find that plaintiffs have presented other clear and convincing evidence of violations of the TRO.  The Court addresses each of plaintiffs' allegations in turn.

Plaintiffs provide the affidavit of Zachary Alveris, III, a tenant of plaintiff Fred Vogler.  Alveris states that he has been unable to get electricity at his home.  He also states that he received a "Notice of Condemnation" on February 26, 2008, alleging that the house does not meet certain minimum specifications. (Alveris Aff., R. Doc. 33-2, ¶¶ 2-3.)  There is insufficient evidence regarding his inability to have electrical services turned on for the Court to conclude that plaintiffs have met their burden of showing by clear and convincing evidence that Alveris' difficulties getting his electrical services activated violates the provisions of the TRO, which protects tenants only from the disconnection of utility services.  Further, to the

extent it is relevant, the Notice of Condemnation Alveris received was issued before the implementation of the TRO. Finally, Alveris also attaches to his affidavit a Notice of Violation for the property he lives at which was served on January 30, 2008. (R. Doc. 33-2 at 3.)  It is not a violation of the TRO as it pre-dates the entry of the TRO.

Plaintiffs attach the affidavit of Courtney and Russell Beaty, who lease a property from plaintiff Your Home Solutions. (Beaty Aff., R. Doc. 33-3.)  The Beatys state that they received a Notice of Violation on or about March 28, 2008. (*Id.* ¶ 3; *see also* R. Doc. 33-3 at 3.)  The Notice of Violation they attach to their affidavit provides that the Notice was served on March 28 and March 31, 2008.  Therefore the Notice does not constitute a violation of the TRO.

Rebecca Brown and Shirley Rodgers, who both have rent-to-buy agreements with Your Home Solutions, also received Notices of Violation before the entry of the TRO, on March 17 and March 18, 2008, respectively. (Brown Aff., R. Doc. 33-5 ¶ 7; Rodgers Aff., R. Doc. 33-8 ¶ 7.)  Once again, the Court cannot impose sanctions, because this conduct took place before the TRO was in place.

Carlo James submits an affidavit stating that he is the brother of Ken James, a plaintiff, and occupies one of Ken James' homes on a barter basis. (James Aff., R. Doc. 33-6, ¶ 1-2.)

9

Carlo James attests that on April 16, 2008, he attempted to obtain an occupational license at the offices of the St. Bernard Parish Zoning Department, but that when he told someone there that he intended to enter into a bond-for-deed agreement with his brother he "was told that he could not receive an occupational license unless he was an owner of the house and so long as the owner did not have a Permissive Use Permit." (*Id.* ¶¶ 4-5.) Although Ken James is a plaintiff, his brother Carlo James is not, therefore the Court cannot address the Parish's alleged refusal to provide Carlo James an occupational license. (James Aff., R. Doc. 33-6.)  Further, as a tenant, Carlo James is not covered by the TRO because his affidavit does not allege that the Parish was threatening to cut off his utilities, the only protection for tenants included in the TRO.

Plaintiffs also attach the affidavit of Jimmy Toups, in which he alleges that he was denied an occupational licence because he was occupying property without a Permissive Use Permit. (Toups Aff., R. Doc. 33-10.)  He further alleges that since he and his wife entered into a bond for deed agreement, they have been further threatened by Parish officials with the disconnection of his utilities, with fines, and with possible incarceration.  Plaintiffs did not introduce any evidence, however, that Toups is covered by the TRO, and then admitted during oral argument that he is not a plaintiff or tenant of a

plaintiff.  Therefore there is no evidence that any alleged actions by the Parish to enforce the Ordinance against him were in violation of the TRO.  Further, his allegations include events that took place in March, before the TRO was put in place.

Plaintiffs also alleged in their motion for sanctions that Keisha Kepperd, a tenant of plaintiff Andrew Baker, had her water meter pulled from the ground in front of her house on April 14, 2008.  They alleged that she was told her water was being disconnected because her landlord did not have a rental permit. Plaintiffs also alleged that Tracy Richards, a tenant of plaintiff David Choate, had her electric meter pulled from the wall in the back of her house on April 10, 2008, and that she now has no electricity.

The Parish has introduced evidence that these allegations do not reflect violations of the TRO.  Defendant introduces evidence that Kepperd's water meter was pulled because neither she nor her landlord ever applied for a water and sewer account, and therefore were not paying for water and sewer services. (*See* Lion Aff. & Exs., R. Doc. 37-4.)  The Parish provides a letter from the General Counsel for Entergy Louisiana, LLC, providing that Richards' electrical services were discontinued when she did not pay her electric bill. (R. Doc. 37-7.)

Finally, the arrest and incarceration of Okechukwu Okafor, as detailed in his affidavit, (R. Doc. 33-7), is not before the

11

Court because Okafor was not named as a plaintiff at the time of the alleged violations of the TRO.  Therefore Okafor is not covered by the TRO.

**IV.  CONCLUSION**

The Court finds that plaintiffs have established by clear and convincing evidence that defendant violated the TRO in nine separate instances.  Accordingly, the Court imposes a fine of $1,000.00 per violation on defendant St. Bernard Parish for a total of $9,000.00.

New Orleans, Louisiana, this 18th day of August, 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE