UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDREW BAKER, ET AL.                    CIVIL ACTION

VERSUS                                  NO: 08-1303

ST. BERNARD PARISH COUNCIL              SECTION: "R"(3)


<u>**ORDER AND REASONS**</u>

Before the Court is plaintiffs' motion for a preliminary injunction.  For the following reasons, the Court DENIES plaintiffs' motion for injunctive relief.


**I.  BACKGROUND**

On March 17, 2008, plaintiffs sued the St. Bernard Parish Council, seeking injunctive relief, a declaratory judgment, and damages.[1] (Compl., R. Doc. 1.)  Plaintiffs allege that St. Bernard Parish Council Ordinance #697-12-06 constitutes a takings without just compensation, in violation of their Fifth Amendment rights, and that the Ordinance further violates plaintiffs' Fourteenth Amendment due process rights. (Compl. ¶¶ 23-30.)

_____

[1] The original plaintiffs are Andrew Baker, Chad Baker, Robert Baker, Turpin Barrett III, Dan Brenneman, Rodney Brenneman, Jesse Chase, David Choate, Michael Dean, Homer Duff, Ike Fountain, Ken Fountain, Janice Haitfield, John Huckeba, Mike Johnson, Kimberly Knaisch, John Lake, Robert Sampson, Joe Stagman, Greg Tapp, Fred Vogler, Michael Wambach, Vickie Wambach, James Welch, Kevin Wing, Your Home Solution Louisiana, LLC, and Your Home Solution Management, LLC.

Plaintiffs' requested relief includes a preliminary and permanent injunction enjoining the St. Bernard Parish Council from enforcing the Ordinance. (*Id.* ¶ 31.)

      *1. History*

Plaintiffs allege that the widespread flooding in St. Bernard Parish after Hurricane Katrina created a severe housing shortage. (*Id.* ¶ 5.)  In response to the housing shortage, St. Bernard Parish Council (hereinafter "St. Bernard," or "the Parish") passed a series of ordinances involving rental properties. (*Id.*)  On October 2, 2006, for example, St. Bernard enacted Ordinance SBPC #670-09-06, which came to be known as the "blood relative ordinance."  The ordinance prohibited persons from renting, leasing, loaning, or otherwise allowing occupancy or use of any single-family residence other than by family members related by blood, without first obtaining a Permissive Use Permit from the St. Bernard Parish Council. (Compl. ¶ 6.)  In November of 2006, Wallace Rodrigue and the Greater New Orleans Fair Housing Action Center moved to enjoin the operation of the blood relative ordinance. *See Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, Civ. A. 06-7185 (filed Oct. 3, 2006).

In February of 2008, the parties entered a Consent Order resolving the blood relative ordinance litigation. *See id.* (Consent Order, R. Doc. 114, Feb. 28, 2008).  Judge Berrigan

2

exercises jurisdiction over the Consent Order, which is to continue for three years. (*Id.*)  Pursuant to the Consent Order, St. Bernard Parish rescinded the blood relative ordinance and is permanently enjoined from re-enacting it.  Further, the Greater New Orleans Fair Housing Action Center continues to monitor applications for Permissive Use Permits made pursuant to Ordinance SBPC #697-12-06 (hereinafter "Ordinance 12-06," or "the Ordinance"), the Ordinance that St. Bernard passed on December 19, 2006, and the Ordinance plaintiffs challenge in this action. (*See also* Compl. ¶¶ 8-9.)

        2.   *Ordinance 12-06*

    On January 4, 2007, Ordinance 12-06 took effect when it was signed into law by Parish President Henry Rodriguez, Jr. ("Ordinance 12-06," R. Doc. 5-2.)  Ordinance 12-06 is nearly identical to the blood relative ordinance except that it does not have the specific blood relative requirement language, and it adds a clause stating that the ordinance shall preserve the constitutional rights of all persons for home ownership. (*Id.; see also* Compl. ¶ 14.)  The preamble to the Ordinance provides that it is meant to "encourage single family residence owners to return, rebuild, and resume living in the parish and to reoccupy their homes ... to maintain the integrity and stability of established neighborhoods ..." and "to foster and encourage a community and family atmosphere in the neighborhoods of St.

Bernard Parish." (Ordinance 12-06.)  In its original version, the ordinance provided:

> No person or entity shall rent, lease, loan, or otherwise allow occupancy or use of any single family residence located in an R-1 zone by any person or group of persons, without first obtaining a Permissive Use Permit from the St. Bernard Parish Council.

The ordinance further provided that any person or entity that allowed occupancy or use of the property, or any person over the age of majority who occupied or used any property in violation of the Ordinance was guilty of a misdemeanor and subject to a fine for each day of violation of the Ordinance. *Id*.

On June 17, 2008, after plaintiffs filed the motion for preliminary injunction, the Parish Council amended Ordinance 12-06, to remove all penalty provisions applicable to tenants, and to clarify that the Ordinance applies only to rentals, and not gratuitous uses. (*See, e.g.,* Taffaro Supp. Aff., R. Doc. 61-5, ¶ 6; *see also* Ordinance SBPC #865-06-08, R. Doc. 61-6.)  The Ordinance now provides as follows:

> No person or entity shall rent, or lease, directly or indirectly, any single family residence located in an R-1 zone, without first obtaining a Permissive Use Permit from the St. Bernard Parish Council.

(R. Doc. 61-7.)  Further, on June 10, 2008, Craig Taffaro, President of the Parish Council, issued Executive Order #05-08, which provides that any Notices of Violation of the Ordinance shall refer only to the means of enforcement set forth in the Ordinance, and will not threaten to disconnect utility services.

4

(Taffaro Supp. Aff. ¶ 7; Exec. Ord. #05-08, R. Doc. 61-8.)  The Ordinance does not apply to single family residences that were rental residences before the adoption of the Ordinance, and also does not apply to not-for-profit corporations.

In order to obtain a Permissive Use Permit, a pre-requisite to renting a single family residence, an individual must present his or her application for a Permit to the St. Bernard Parish Planning Department, which reviews the application and issues a recommendation to the Parish Council.  The application includes a $250.00 application fee. (Taffaro AFf., R. Doc. 35-2, ¶ 8.)  The Parish uses four approval criteria for determining whether to grant a Permissive Use Permit for an R1 dwelling:

1.    The history of any properties within a one thousand (1,000) foot radius being used as rental properties.

2.    The volume of rental properties shall not exceed 2 R1 Permissive Use Permit rental properties within five hundred (500) linear frontage feet of contiguous R1 dwellings.

3.    The availability of R1 homes used as rental properties within the boundaries of St. Bernard Parish at the time of the request.

4.    The level of compliance exhibited by the property owner in maintaining other rental properties within St. Bernard Parish.

(Pls.' Compl. ¶ 18; *see also* Compl. Ex. A, R. Doc. 1-3 at 5.) These approval criteria are attached to application packets, and state that they are "to be used as a 100% test method, meaning that all four (4) criteria should be met in order for

5

recommendation of approval to be granted." (*See id.*)  The Parish
Planning Department considers the approval criteria when deciding
whether to recommend to the Council that it grant a Permissive
Use Permit.  At one point, ten other criteria were proposed for
determining when to grant a Permissive Use Permit, which included
school system resources, Sheriff's department resources,
electrical utility grid requirements, and road, public lighting,
and sidewalk infrastructure conditions. (Compl. ¶ 21.)  Taffaro
states in his affidavit that these additional ten criteria were
background factors used to decide on the four criteria currently
used, but "have never been used in any stage of the permitting
process." (Taffaro Aff. ¶ 9.)  Finally, the Ordinance provides
that after the Parish Council makes a decision pursuant to the
provisions of the Ordinance, such decision can be appealed to the
district courts of St. Bernard Parish.

As of August 1, 2008, the St. Bernard Parish Council had
approved 41 applications for a Permissive Use Permit and denied
one application, because the property was located in a Murphy
Refinery buyout region. (Graves Aff., R. Doc. 35-4, ¶ 5; Graves
Supp. Aff., R. Doc. 88-4, ¶ 5.)

### 3.   *Plaintiffs' Allegations*

The plaintiffs who filed the first complaint in this matter
all purchased property in St. Bernard Parish before the Parish
passed Ordinance 12-06.  They entered into management agreements

with plaintiffs Your Home Solution Management, LLC and Your Home Solution Louisiana, LLC (collectively, "Your Home Solution" or "YHS"), for the purpose of renting or leasing to purchase their properties. (Compl. ¶ 10.)  Plaintiffs allege that on February 14, 2008, St. Bernard Parish served one of the plaintiffs, Your Home Solution, with an Order to Cease and Desist from engaging in illegal construction and occupancy of approximately 50 houses located in St. Bernard Parish because of its failure to obtain Permissive Use Permits pursuant to Ordinance 12-06. (Compl. ¶ 11.)  The next day, St. Bernard Parish served Your Home Solution with a Notice of Violation of Ordinance 12-06 for a property at 3809 Riverland Drive in Chalmette. (Compl. ¶ 13; *see also* Pls.' Compl. Ex. C.)  The notice stated that Your Home Solution was in violation because it did not have a Permissive Use Permit as required by the Ordinance. (*Id.*)

Plaintiffs allege that "Ordinance 12-06, separate and distinct from any potential discriminatory aspects, is equally unconstitutional in that it constitutes such an 'unduly oppressive' regulation upon land use as to constitute either a Fifth Amendment 'taking' or a Fourteenth Amendment violation of due process." (Compl. ¶ 15.)  On April 11, 2008, counsel for plaintiffs filed an amended and supplemental complaint adding 17

individuals and seven additional LLCs as plaintiffs.[2] (Amend. Compl., R. Doc. 9.)  Plaintiffs also filed a third amended complaint on June 24, 2008, alleging that the Ordinance violates the dormant Commerce Clause of the U.S. Constitution.[3] (R. Doc. 58.)

     *4. Procedural Posture*

Shortly after filing suit, on April 3, 2008, plaintiffs moved for a temporary restraining order (TRO) and reiterated their prayer for a preliminary injunction. (R. Doc. 5.)  The Court entered a Consent TRO that same day, generally prohibiting and restraining St. Bernard from enforcing or implementing Ordinance 12-06 against Complainants and further prohibiting St. Bernard from taking steps to enforce Ordinance 12-06 by way of disconnecting utility services to tenants occupying houses owned by Complainants. (Consent TRO, R. Doc. 6).[4]  On April 17, 2008,

_____

[2] Additional plaintiffs include: Antoine R. Barreca, Corinne L. Barreca, Paul Dicocco, Janet Dicocco, John P. DiPietro, Judy Galarza, Ron Galarza, Ken James, Thomas Vita, Gina Hume, David Hume, Minh Quach, Patricia Quach, Tam Quach, Jay V. Suarez, Valerie Warren, James Wilks, R.E. Breaux Company, LLC, James & Vita, LLC, J&G Holdings and Investments, LLC, Newpoint Properties, LLC, R&J Investments 67, LLC, R&J Investment 3720, LLC, and Satchmo Properties, LLC.

[3] The third amended complaint also adds the following plaintiffs: New Eastern Ventures, Inc., Matt Holcomb, Jerry D. Moore, Okechukwu Okafor, E&M Global Properties, LLC, Eli Chen, Moishe Sharagin, and E&Y Properties, LLC.

[4] The TRO stated, in pertinent part: "IT IS ORDERED THAT A Temporary Restraining Order issue herein and that the St. Bernard Parish Council is prohibited and restrained from enforcing or

8

plaintiffs filed a motion for civil contempt and sanctions against St. Bernard, alleging a variety of actions by defendant and its employees in violation of the TRO's constraints. (R. Doc. 10.)

On June 3, 2008, the Court held a preliminary injunction hearing and heard oral argument on plaintiffs' motion for sanctions.  Plaintiffs then advised the Court that they wished to amend the complaint once again.  Accordingly, the Court granted the plaintiffs leave to amend the Complaint and instituted a briefing schedule for any amendment. (*See* Order, R. Doc. 56, Jun. 6, 2008.)  In response, plaintiffs filed a third amended and supplemental complaint on June 24, 2008, as well as a supplemental memorandum in support of their motion for a preliminary injunction. (R. Docs. 58, 59.)  St. Bernard Parish responded by filing a motion for summary judgment, contending that not only do plaintiffs' allegations offer no support for entry of an injunction, but that they are subject to dismissal as a matter of law. (R. Doc. 61.)

Having considered the motion for preliminary injunction, the

---

implementing against Complainants an ordinance passed on December 19, 2006, known as Ordinance #697-12-06 ("Ordinance 12-06"), requiring property owners wishing to rent, lease, or lease-to-own properties to first obtain a "Permissive Use Permit" from the St. Bernard Parish Council from taking steps against Complainants to enforce Ordinance 12-06 by ordering "all utility service [to be] disconnected" from the tenants occupying houses owned by Complainants." (Consent TRO, R. Doc. 6.)

evidence submitted by the parties, and the parties' oral arguments, the Court is prepared to rule on the motion.

       5.   *"Racial Animus"*

In plaintiffs' original complaint and during the preliminary injunction hearing, plaintiffs disavowed that they are currently alleging a claim for discrimination on the basis of race. (*See* Compl. ¶ 15; Prelim. Inj. Hr'g Tr. at 14-17.)  The Court explicitly invited plaintiffs during the preliminary injunction hearing to amend the complaint to bring any claim of racial discrimination, but told them that it had to be alleged in the complaint as a cause of action with evidentiary support if it was going to be the basis for injunctive relief.  After amending the complaint three times,[5] plaintiffs have still not brought any affirmative claims for relief for racial discrimination under any federal statutory or constitutional provision.  What plaintiffs have done is allege a cause of action under the dormant commerce clause for discrimination against <u>interstate commerce</u>, incorporating the allegation that because the statute originated in the blood relative Ordinance, it is fueled by racial animus. The Court will address those allegations within its discussion of

                        

[5] Plaintiffs also have pending before the Court a motion for leave to amend the complaint a fourth time, which motion is opposed by the defendant. (R. Doc. 79.)  The proposed fourth amended complaint also does not include a cause of action for discrimination on the basis of race, but rather seeks to add nine additional plaintiffs.

plaintiffs' dormant Commerce Clause claim.  What is clear is that after three amendments, and after explicit invitation from the Court and opportunity to do so, plaintiffs have failed to allege a cause of action asserting that they were victims of racial discrimination.  The Court does not see what more it can do to bring such a claim to the forefront, if it exists, than to ask plaintiffs to bring it if they have it.  Further, the Court takes some comfort in the fact that there is ongoing monitoring of applications for Permissive Use Permits pursuant to the Consent Decree issued in *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, Civ. Act. 06-7185, which was a case that specifically alleged a claim for racial discrimination in housing.


## II.   LEGAL STANDARD

A preliminary injunction is an extraordinary equitable remedy that may be granted only if the movant demonstrates four essential elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any potential harm to the non-movant; and (4) that the injunction will not undermine the public interest. *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006).  Injunctive relief is to be granted only when the movant has "clearly carried the

burden of persuasion" on all four requirements. *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).  The Fifth Circuit has held that the extraordinary relief of injunction should be used "sparingly, cautiously and only ... where both the right and wrong claimed are clear and the necessity for the extraordinary relief of injunction is equally clear." *Sharp v. Lucky*, 266 F.2d 342, 343 (5th Cir. 1959).


## III. DISCUSSION

Plaintiffs' original complaint alleges violations of the Fifth and Fourteenth Amendments.  Plaintiffs' third amended complaint alleges that defendant has violated the dormant Commerce Clause.  The Court finds that plaintiffs have not shown a substantial likelihood of success on the merits of any of these claims.[6]

*1.   Takings*

Plaintiffs allege that "their property values have been diminished by the actions of St. Bernard and by the promulgation and attempted enforcement of Ordinance 12-06 for which they are entitled to just compensation." (Compl. ¶ 26.)  The Court finds

---

[6] The Court does not address the remaining requirements for injunctive relief as the movant must demonstrate all four essential elements to obtain a preliminary injunction. *See Karaha Bodas*, 335 F.3d at 363.

that plaintiffs' Fifth Amendment takings claims are not ripe for judicial review.  On this issue, the Court does not write on a blank slate.  Generally when considering whether a claim is ripe, the Court considers the hardship to the parties of withholding court consideration, and the fitness of the issues for judicial decision. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1977)*, overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977).  In a takings case, however, ripeness is assessed under the two-prong test elucidated in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985).  Under the *Williamson County* test, a takings claim is ripe when: (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue;" and (2) the plaintiff "seek[s] compensation through the procedures the State has provided," unless such procedures are unavailable or inadequate. *Id*. at 186, 194, 197.

Under the first prong of the *Williamson County* test, the U.S. Supreme Court has found no ripeness when a case involves a matter that has not been finally decided.  Specifically, in cases claiming a government taking without just compensation, a matter has been held unripe when the regulatory entity has not reached a final decision *vis-à-vis* the regulation's application to the property in question. *See Williamson County, supra; Brandywine,*

13

*Inc. v. City of Richmond, Kentucky*, 359 F.3d 830, 834 (6th Cir. 2004).  The Supreme Court requires that the land use authority have the opportunity to decide and explain the reach of a challenged regulation "using its own reasonable procedures." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001).  "As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established." *Id.* at 621.  The Fifth Circuit, too, has found takings claims unripe when the property owner has "ignored or abandoned some relevant form of review or relief, such that the takings decision cannot be said to be final." *Urban Developers, LLC v. City of Jackson*, 468 F.3d 281, 293 (5th Cir. 2006).

To meet the second prong of the *Williamson County* ripeness test, a movant must also show that compensation for the alleged taking has duly been sought and denied via all available administrative procedures. *Williamson County*, 473 U.S. at 186-187.  This includes relevant state procedures, such as inverse condemnation proceedings. *Id.* at 194 n.13.

Plaintiffs' takings claims are not ripe for review. Plaintiffs do not contest that all but one of the plaintiffs in this action filed suit either without filing an application for a Permissive Use Permit, or without obtaining a final determination on an application for a Permissive Use Permit. (*See* Pls.'

14

Response to Statement of Uncontested Facts, R. Doc. 63-3 at 3.)
Plaintiffs further do not contest that the one plaintiff that has
received a final determination on its application was granted a
permit and can now rent its property. (*Id.*)  Thus, plaintiffs
have not met the first prong of the *Williamson County* test
requiring a final decision.

Additionally, as no plaintiff has been denied a Permissive
Use Permit, no plaintiff could have obtained compensation from
the state through a local, state, or federal mechanism - such as
an inverse condemnation hearing - for the alleged takings.
Louisiana law provides for inverse condemnation suits. *See, e.g.,*
*State Through Dept. of Transp. and Development v. Chambers Inv.*
*Co., Inc.* 595 So. 2d 598, 602 (La. 1992) (finding that action for
inverse condemnation is available in all cases when there has
been a taking of property and just compensation has not been
paid).  Plaintiffs have not alleged or provided the Court with
any evidence that they have met the exhaustion required by the
second prong of the *Williamson County* test. *See John Corp. v.*
*Houston*, 214 F.3d 573, 581 (5th Cir. 2000) ("Because a violation
of the Takings Clause does not occur until just compensation has
been denied, Appellants must use available state procedures to
seek such compensation before they may bring a [] takings claim
to federal court.") (citing *Williamson County*, 473 U.S. at 194
n.13.).

15

During oral argument plaintiffs conceded that their takings claims are not ripe:

> THE COURT:    Your opponent has raised ripeness arguments on your takings claim ... because your clients have not gone through either the permit process or sought compensation for a deprivation through the procedures available through inverse condemnation.  You haven't answered that in your reply memorandum. ... Do you have anything to tell me that those ripeness arguments are incorrect?
>
> MR. KLEIN:    No, Your Honor.  No.
>
> THE COURT:    Then that takes the takings claim off the table.

(Prel. Inj. Hr'g Tr. at 6-7, June 3, 2008.)  In plaintiffs' memorandum filed in conjunction with their third amended complaint, plaintiffs seek to "recant" their previous concession that the takings claims are not ripe.  Specifically, plaintiffs state:

> The rights to property are so fundamental, and the commercial nature of a house purchase is so interwoven with interstate commerce and interstate rights, as the court in Groome so well put it, that the rigors an out-of-state investor must undergo make the ordinance invalid under the more facile "taking" analysis.

(Pls.' Supp. Mem., R. Doc. 59 at 6-7.)  Although plaintiffs seek to retract their admission that their takings claims are not ripe, they do not address the issues the Court raised during oral argument regarding plaintiffs' failure to meet the *Williamson County* test.  Plaintiffs retract their takings claim exclusively by reference to *Groome Resources Limited v. Parish of Jefferson*,

16

234 F.3d 192 (5th Cir. 2000).

*Groome Resources*, however, is inapposite.  In *Groome Resources*, the district court granted a permanent injunction in favor of Groome Resources Ltd., L.L.C., enjoining Jefferson Parish from interfering with or withholding approval of Groome Resources' application for "reasonable accommodations" under 42 U.S.C. § 3604(f)(3)(B) to operate a for-profit group home for five individuals suffering from Alzheimer's disease.  A Jefferson Parish zoning ordinance did not permit the operation for profit of a group home for five unrelated individuals. *Id.* at 196.  The zoning ordinance also provided for a process by which reasonable accommodations could be made under the Fair Housing Amendments Act ("FHAA").  Groome Resources applied for a reasonable accommodation, and after receiving no resolution on its application, Groome Resources filed suit seeking injunctive relief enjoining Jefferson Parish from withholding approval, contending that the delay in approval frustrated the purpose of the FHAA and was tantamount to a denial of its reasonable accommodations application.  Jefferson Parish appealed the district court's grant of an injunction, arguing that Congress exceeded its constitutional authority in passing that section of the Fair Housing Amendments Act of 1988. *Groome Resources,* 234 F.3d at 195.  The Fifth Circuit held that the issue was ripe for review because the issues were fit for judicial decision and

17

there would be hardship to the parties by withholding court consideration. *Id.* at 199.  The Court found that under the Fair Housing Act, "a violation occurs when the disabled resident is first denied a reasonable accommodation." *Id.* at 199 (quoting *Bryant Woods Inn, Inc. v. Howard Country, Md.*, 124 F.3d 597, 602 (4th Cir. 1997)).  The Court then clarified that the analysis of ripeness in cases brought pursuant to the Fair Housing Act differs from that in takings cases:

> As such, ripeness in the Fair Housing Act context must be distinguished from ripeness cases involving unconstitutional takings or other zoning issues. *See Bryant*, 124 F.3d at 602 ("Fair Housing Act claims are thus unlike takings claims, which do not ripen until post-decision procedures are invoked without achieving a just compensation.").

*Id.* at 199 n.6.  Accordingly, the Fifth Circuit's decision in *Groome Resources* does not speak to the ripeness of an unconstitutional takings claim such as the one currently before the Court.

Because plaintiffs' takings claims are not ripe, the Court finds that plaintiffs have not met their burden of showing a substantial likelihood of success on the merits of their Fifth Amendment claims.

### 2.   Due Process

Plaintiffs allege that the Ordinance violates their Fourteenth Amendment due process rights because it has no rational basis for achieving a legitimate public purpose, it

18

"uses unreasonable, intimidating, irrational, oppressive and indefensible methods for controlling land use," and is "so unduly oppressive ... that it constitutes an impossibility." (Compl. ¶ 29.)[7]  Plaintiffs do not specify whether the challenge is a procedural or substantive due process challenge, accordingly, the Court addresses both types of due process claims.[8]

             i.   Procedural Due Process

Plaintiffs do not have a substantial likelihood of success on the merits of their claim that by enacting the Ordinance, St. Bernard Parish violated their rights to procedural due process. The Supreme Court has held that procedural due process requirements do not apply to legislative actions. *See, e.g., BiMetallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 445 (1915) (noting that when Congress passes legislation, individual "rights are protected in the only way

---

[7]  Although plaintiffs additionally introduce in their Reply Brief a discussion of state zoning laws, it adds nothing to the discussion of federal due process violations. Plaintiffs did not allege any state law claims in either their original or amended complaints, nor do they invoke the Court's supplemental jurisdiction.

[8]  "Procedural due process promotes fairness in government decisions '[b]y requiring the government to follow appropriate procedures when its agents decide to deprive any person of life, liberty, or property.'" *John Corp. v. Houston*, 214 F.3d 573, 577 (5th Cir. 2000) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  "Substantive due process 'by barring certain government actions regardless of the fairness of the procedures used to implement them, [] serves to prevent governmental power from being used for purposes of oppression.'" *Id.* (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)).

that they can be in a complex society, by their power, immediate
or remote, over those who make the rule."). Generally applicable
legislative and quasi-legislative decisions, "are not subject to
procedural due process constraints, even though they result in a
deprivation of a recognized liberty interest. Rather, such
decisions are subject only to substantive due process analysis."
*Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1149 (5th
Cir. 1997). When an elected body, such as a City Council, makes
a zoning decision, the Fifth Circuit characterizes the action as
legislative or "quasi-legislative," thereby "negating procedural
due process claims." *Jackson Court Condominiums, Inc. v. City of
New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989); *see also
Christensen v. Yolo County Bd. of Sup'rs*, 995 F.2d 161, 166 (9th
Cir. 1993) ("Zoning decisions that affect a large number of
people ... do 'not ordinarily give rise to constitutional
procedural due process requirements.'")(quoting *Harris v. County
of Riverside*, 904 F.2d 497, 502 (9th Cir. 1990)).

For example, in *Jackson Court*, the former owner of a
condominium complex sued the City of New Orleans after the City
Council passed a municipal ordinance prohibiting the
establishment of time-share condominiums in residential areas.
The City Council was concerned that the increasing development of
time-share condominiums would have a deleterious effect on the
city's historic neighborhoods. *Id.* at 1072. The Council also

20

refused to grant plaintiff an exemption from the moratorium under a waiver provision.  Before the City enacted the ban on time-shares, plaintiff had purchased a 21-unit apartment building on the edge of the Garden District with the intent of transforming the apartments into luxury time-share condominiums.  Plaintiff had invested $1.2 million in the property for that purpose and therefore applied for a waiver from the time-share moratorium. The City Council denied plaintiff's application. *Id.* at 1073. The plaintiff sued the City of New Orleans in federal court, raising a number of 42 U.S.C. § 1983 claims, including that it was denied procedural due process, substantive due process, and that the Ordinance effected an unconstitutional taking.  The Fifth Circuit affirmed the district court's summary judgment ruling for the City on all of plaintiff's constitutional claims. With respect to the *Jackson Court* plaintiff's procedural due process claim, the Fifth Circuit noted that zoning decisions are to be reviewed under the same constitutional standards employed to review statutes enacted by state legislatures, and therefore held that because the action was legislative, procedural due process requirements did not apply.

Ordinance 12-06 is applicable to all single family residences located in an R-1 zone in St. Bernard Parish and therefore is a generally applicable legislative or "quasi-legislative" decision.  The Court finds, as the Fifth Circuit did

21

in *Jackson Court*, that the Ordinance St. Bernard Parish enacted
"was a legislative decision of broad applicability by an elected
City Council, and hence no procedural due process rights attach."
*Jackson Court*, 874 F.2d at 1076.  Therefore plaintiffs likely
will not prevail on a claim that defendant has violated their
procedural due process rights by enacting the Ordinance.

Plaintiffs previously contended that defendant's *enforcement*
of the Ordinance, including threatening to disconnect tenants'
utilities, violated the due process rights *of the tenants*. (*See,
e.g.,* Alveris Aff., R. Doc. 33-2; Beaty Aff., R. Doc. 33-3;
Brenneman Aff., R. Doc. 33-4; Brown Aff., R. Doc. 33-5; Carlo
James Aff., R. Doc. 33-6; Rodgers Aff., R. Doc. 33-8; Toups Aff.,
R. Doc. 33-10.)  The Court does not address this contention
because none of the plaintiffs is a tenant. (Prelim. Inj. Hr'g
Tr. at 14:11:14) (Court: None of the plaintiffs in this case are
tenants, right, or are they?  Mr. Klein: I have no tenants, Your
Honor.")  Additionally, the Parish Council has since amended the
Ordinance to remove all provisions that provided for enforcement
of the Ordinance against tenants. (*See* R. Doc. 61-7) (reflecting
language stricken from Ordinance 12-06.)

ii.  Substantive Due Process

As an initial matter, the Court considers whether

plaintiffs' substantive due process claims are ripe for review.[9]
The Court further considers whether its dismissal of plaintiffs'
takings claim requires dismissal of plaintiffs' substantive due
process claims.  In *County of Sacramento v. Lewis*, 523 U.S. 833
(1998), the Supreme Court explained that "where a particular
Amendment provides an explicit textual source of constitutional
protection against a particular sort of government behavior, that
Amendment, not the more generalized notion of substantive due
process, must be the guide for analyzing these claims." *Id.* at
842 (citations and quotation omitted).  In *John Corporation v.
City of Houston*, Judge Carolyn King undertook an extensive
analysis of the cases alleging substantive due process and
takings violations, and determined that substantive due process
claims alleging deprivations of property are not necessarily
subsumed under the Takings Clause. *John Corp.*, 214 F.3d at 582;
*See also Simi Inv. Co., Inc. v. Harris County, Tex.*, 236 F.3d
240, 248 (5th Cir. 2000) (revisiting issue of when a substantive
due process claim is properly before the court if the takings
claim is not ripe for review).  Rather, "a careful analysis must
be undertaken to assess the extent to which a plaintiff's
substantive due process claim rests on protections that are also

---

[9] Although defendant has not challenged the ripeness of
plaintiffs' substantive due process claims, federal courts have a
duty to consider objections to their jurisdiction sua sponte.

afforded by the Takings Clause." *John Corp.*, 214 F.3d at 583.
Judge King then turned to the facts of the case before her and
noted that appellants' allegations that the ordinances at issue
in the case were unconstitutionally vague invoked protections of
the due process clause that are separate from those afforded by
the takings clause, and therefore the allegations were not
subsumed by the takings clause.  The Fifth Circuit further held
that finality was not at issue because it was clear what the City
had determined to be the proper use of Appellants' property.
Therefore, the Court did not apply the *Williamson County*
requirements to the substantive due process claim, but found that
it was ripe for review.

Plaintiffs do not tie specific allegations to specific
claims but launch an omnibus attack on the Ordinance.  The Court
is therefore unable to clearly identify which allegations form
the grounds for plaintiffs' substantive due process claims.
Giving plaintiffs the benefit of the doubt, the Court will go
forward with the merits of plaintiffs' substantive due process
claim, and interpret plaintiffs' substantive due process claim as
an allegation that the Permissive Use Permit application process
is so "oppressive" that the Ordinance violates the substantive
due process rights of those subject to it. (*See* Compl. ¶¶ 27-30.)
(alleging that 12-06 "has no rational basis for achieving a
'...legitimate public purpose...'", "uses unreasonable,

24

intimidating, irrational, oppressive and indefensible methods for controlling land use," and "is so unduly oppressive upon landowners that it constitutes an impossibility.")  The Court finds that this claim is not subsumed within the takings analysis, because it does not necessarily go towards a regulatory taking of plaintiffs' investment-backed expectations, and further that it is ripe for review, as plaintiffs attack the Ordinance as including overly burdensome criteria on its face that are not rationally related to the purposes of the Ordinance.

Nevertheless, plaintiffs' appreciation of the law in this area is misguided, and therefore their legal analysis of their substantive due process rights misses the mark.  Substantive due process protects individuals from arbitrary and unreasonable government action that deprives any person of life, liberty or property.  Substantive due process challenges to zoning regulations are analyzed under the rational basis standard. Under this standard, a zoning decision will be upheld if it has a rational relationship to a legitimate government interest. *See Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1044 (5th Cir. 1998); *Shelton v. City of College Station*, 780 F.2d 475, 477 (5th Cir. 1986) (holding that decisions of state zoning boards do not violate substantive due process unless the court finds no 'conceivable rational basis' on which the board might have based its decision).  Rational basis review is an extremely lenient

standard of review; therefore "[a]ttacks against zoning ordinances under this test are rarely successful." *Wood Marine Service, Inc. v. City of Harahan*, 858 F.2d 1061, 1066 (5th Cir. 1988) (citing *Shelton*, 780 F.2d at 479); *see also Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926) (an ordinance is not to be declared unconstitutional unless "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.").

Here, defendant has stated that its purpose in enacting the Ordinance was to stabilize the housing market in St. Bernard Parish, and to "encourage single family residence owners to return, rebuild, and resume living in the parish and to reoccupy their homes in already long established neighborhoods." (12-06 Ordinance at 7.) This is a rational and permissible basis for a land use restriction. *See, e.g., Jackson Court Condominiums*, 874 F.2d at 1078 ("Certainly the protection of residential integrity is a legitimate objective of a zoning regulation."). Further, in *Texas Manufactured Housing Ass'n, Inc. v. Nederland, City of*, 101 F.3d 1095 (5th Cir. 1996), the Court upheld an ordinance that required lot owners to get a permit from the city before placing manufactured homes on their property, and in doing so indicated that a zoning ordinance would pass muster if it was "at least debatable" that its restrictions served the ordinance's proffered purpose. *Id.* at 1106 (citing *Shelton*, 780 F.2d at 483). Finally,

26

plaintiffs conceded during oral argument that there is a rational basis for the Ordinance: "I will concede, Your Honor, that having a law or an ordinance that has as a goal avoiding blight, that has as a goal avoiding the diminution of property values across the board, is not an unreasonable goal.  That is not an unreasonable goal." (Prelim. Inj. Hr'g Tr. at 9:20-24.)

In *Shelton v. City of College Station,* the Fifth Circuit reflected on how difficult it is for a plaintiff to prevail on a substantive due process challenge to a municipal zoning decision:

> In the absence of invidious discrimination, suspect classifying criteria, or infringement of fundamental interests, our review of these quasi-legislative decisions is confined to whether the decisions were "arbitrary and capricious."  This requirement of substantive due process under the fourteenth amendment ... is met if there was *any conceivable rational basis* for the zoning decision.

780 F.2d at 477 (emphasis added).  The Court finds that it is "at least debatable" that the Ordinance is rationally related to a legitimate government interest and therefore plaintiffs do not have a substantial likelihood of prevailing on their substantive due process claim.

Plaintiffs averred at the preliminary injunction hearing that although they concede that the Ordinance's *goals* are not unreasonable, that the *means* of achieving those goals are unreasonable and unduly burdensome, and therefore go "too far."[10]

---

[10] In *Pennsylvania Coal v. Mahon*, 260 U.S. 393 (1922), the Supreme Court considered a challenge to a Pennsylvania statute

(*See, e.g.,* Prelim. Inj. Hr'g Tr. 8-10) ("For a parish or a municipality to achieve a reasonable goal, which they have the right to do, they must use the most reasonable and least oppressive means of reaching that goal.")  To the extent that plaintiffs assert that such a means analysis is the test for substantive due process in this context, plaintiffs are wrong on the law.  Plaintiffs' contentions that to survive a due process challenge, the Ordinance must use the most reasonable and least oppressive means of advancing the government's legitimate interest relies on language originating in the takings arena, but that now applies in neither takings cases, nor substantive due process evaluations of zoning ordinances. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005).

In *Lingle*, Chevron challenged legislation the State of Hawaii enacted that created a cap on rent that oil companies could charge their lessee-dealers.  The district court relied on a line of cases holding that an ordinance is constitutional if it substantially advances legitimate government interests and then

---

that prohibited the mining of coal in any manner that would cause the subsidence of property.  Justice Holmes, writing for the Court, found that the regulation constituted a taking. Recognizing that "[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law," Justice Holmes then provided that the "general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Id.* at 413, 415.

granted summary judgment in Chevron's favor, finding that
Hawaii's Act failed the test. *See Agins v. Tiburon*, 447 U.S. 255,
260 (1980) (holding that land use regulation can effect a taking
if it "does not substantially advance legitimate state
interests"); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480
U.S. 470, 485 (1987); *see also Goldblatt v. Town of Hempstead,
N.Y.*, 369 U.S. 590, 594-95 (1962) (considering whether
ordinance's means were reasonably necessary for the
accomplishment of its purpose).  The Supreme Court, Justice
O'Connor writing for the majority, held that the "'substantially
advances' formula announced in *Agins* is not a valid method of
identifying regulatory takings for which the Fifth Amendment
requires just compensation." *Id.* at 545.  The Court explained its
reasoning as follows:

> The *Agins* formula can be read to demand heightened means-
> ends review of virtually any regulation of private
> property.  If so interpreted, it would require courts to
> scrutinize the efficacy of a vast array of state and
> federal regulations-a task for which courts are not well
> suited.  Moreover, it would empower-and might often
> require-courts to substitute their predictive judgments
> for those of elected legislatures and expert agencies.

*Id.* at 544.  In overruling the "substantially advances" formula
as a takings test, the Supreme Court suggested that such a means-
ends test was inappropriate for analysis of whether private
property has been "taken" for purposes of the Fifth Amendment.
The Court concluded that "this formula prescribes an inquiry in

the nature of a due process, not a takings, test, and [] it has no proper place in our takings jurisprudence." *Id.* at 540.

Justice O'Connor clarified, however, that such a means-ends review on the facts of the case before it was also inappropriate for a substantive due process challenge.  She noted that Chevron's challenge did not actually reflect that Hawaii's rent cap actually burdened Chevron's property rights, but rather that the means of the Ordinance would not actually fulfill its stated purpose; "the gravamen of Chevron's claim is simply that Hawaii's rent cap will not actually serve the State legitimate interest in protecting consumers against high gasoline prices." *Id.* at 544. The Court found that this claim did not sound under the takings clause, but rather that Chevron was seeking an injunction against the enforcement of a regulation that it alleged to be fundamentally arbitrary and irrational, a claim similar to the due process claims alleged by the plaintiffs in this case.

The Court explained, however, that courts are not properly equipped for this kind of challenge.  The Court noted that the district court had to choose between the views of two opposing economists to determine whether Hawaii's rent control statute would actually help prevent concentration and supra-competitive prices in the State's retail gasoline market.  The Supreme Court noted that the district court's proceedings were "remarkable, to say the least, given that we have long eschewed such heightened

scrutiny when addressing substantive due process challenges to government regulation." *Id.* at 545.  The Court noted that courts must defer to legislative judgments "about the need for, and likely effectiveness of, regulatory actions." *Id.; see also Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124-125 (1978) ("but it is, by now, absolutely clear that the Due Process Clause does not empower the judiciary "to sit as a 'superlegislature to weigh the wisdom of legislation.'") (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 731 (1963)).

This Court is not in a position to review whether the Ordinance will in fact stabilize the rental market in St. Bernard Parish, or to question whether defendant's legislation is the best way to achieve this goal, or whether St. Bernard Parish could achieve its goal in a less restrictive manner.  On a substantive due process challenge to a zoning ordinance, the Court must uphold the Ordinance if it has a rational relationship to a legitimate government interest. *See Hidden Oaks Ltd.*, 138 F.3d at 1044; *Shelton*, 780 F.2d at 477.  The Fifth Circuit has held that protecting property values is a legitimate government interest, and plaintiffs have conceded as much.  That is not to say that a legislative body is free to do whatever it pleases in the name of a facially legitimate government purpose.  But what the plaintiffs challenge here are the types of restrictions that pass muster everyday.  Regardless of the adjectives plaintiffs

use to describe the burden of the Ordinance, plaintiffs'
complaints involve a $250.00 fee, paperwork in connection with
the application for a Permissive Use Permit, the length of time
it takes to process the applications, and the Ordinance's
enforcement mechanisms, including misdemeanor penalties for
violations of the Ordinance. Plaintiffs' complaints do not
reflect that the whole Ordinance is so arbitrary and capricious
that it is devoid of any constitutional validity under the due
process clause. *Compare Jackson Court*, 874 F.2d at 1077-1079
(holding that neither moratorium on time-share developments, nor
city's refusal to grant a waiver violated substantive due
process) *and Texas Manufactured Housing Ass'n*, 101 F.3d at 1106
(rejecting substantive due process challenge after finding it was
"at least debatable" whether restricting the placement of mobile
homes effectively maintains property values, even though
plaintiffs alleged that the purported rational basis for enacting
Ordinance was "merely a pretext to mask arbitrary and capricious
action") *and Palmieri v. Town of Babylon*, 2006 WL 1155162, at *5
(E.D.N.Y. 2006) (holding that town's rental permit law requiring
property owner to obtain a rental permit for any non-owner
occupied rental unit did "not even remotely raise legitimate *Ex
Post Facto* Clause concerns"); *and Gilbert v. City of Cambridge*,
932 F.2d 51, 56 (1st Cir. 1991) (rejecting in the takings context
claim that passage of a permit requirement, without more,

32

infracted plaintiffs' constitutional rights) *with Berger v. City of Mayfield Heights*, 154 F.3d 621 (6th Cir. 1998) (holding that ordinance requiring vacant lot with less than 100 feet street frontage be "totally cut" to a height of eight inches was arbitrary and capricious, in violation of due process) *and Brady v. Town of Colchester*, 863 F2.d 205 (2d Cir. 1988).  Accordingly, the Court finds that plaintiffs do not have a substantial likelihood of success on their substantive due process claim.

       3.   *Commerce Clause*

     In plaintiffs' third amended complaint, they allege that Ordinance 12-06 discriminates against out-of-state investors and violates the dormant Commerce Clause of the U.S. Constitution. (*See* Third Amend. Compl. ¶ 9.)  Plaintiffs further allege that Ordinance 12-06 constitutes a burden on out-of-state investors and that its sole objective is "local economic protectionism." (*Id.* ¶ 6.)

     Article I, § 8, clause 3 of the U.S. Constitution grants Congress the power to regulate commerce among the states.  The dormant, or "negative," Commerce Clause limits the power of states to regulate commerce. *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 749 (5th Cir. 2006).  "State regulations violate the dormant Commerce Clause by discriminating against or unduly burdening foreign or interstate commerce." *Id.* at 750.  To determine whether a local law violates the dormant Commerce

Clause, courts conduct a two-tiered analysis.  "The first step in analyzing the constitutionality of legislation under the dormant Commerce Clause is to determine 'whether the challenged statute regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect.'" *Texas Manufactured Housing Ass'n, Inc. v. Nederland*, 101 F.3d 1095, 1101 (5th Cir. 1996) (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)).  If the law affirmatively discriminates against out-of-state interests, it is subject to stricter scrutiny and will be upheld only if it is necessary to achieve a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. *Id.* at 1101; *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 100-101 (1994); *see also Piazza's Seafood World*, 448 F.3d at 749 (noting that "[r]egulations that facially discriminate are virtually per se invalid."). The term discrimination in this context "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys.*, 511 U.S. at 99.  If the statute burdens interstate commerce incidentally, courts analyze it using the balancing test the Supreme Court set forth in *Pike v. Brace Church, Inc.*, 397 U.S. 137 (1970), and the statute "will be upheld unless the burden it imposes on interstate commerce is clearly excessive in relation to the

34

putative local benefits." *Id.* at 142.

A clearly discriminatory law may operate in three ways: (1) by discriminating against interstate commerce on its face, *see, e.g., Granholm v. Heald*, 544 U.S. 460, 466 (2005) (striking down state laws restricting out-of-state wineries, but not in-state ones, from selling wine directly to consumers in the state); (2) by harboring a discriminatory purpose, *see, e.g., Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 352-53 (1977) (striking down facially neutral statute prohibiting state grading from appearing on apple boxes and noting evidence that it was intended to discriminate against Washington apples carrying state grades); or (3) by discriminating in its effect, *see, e.g., W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 194 (1994) (striking down facially neutral law imposing assessment on all milk sold to Massachusetts retailers because its effect on in-state producers was entirely offset by the subsidy provided exclusively to in-state dairy farmers).

The Court finds that Ordinance 12-06 is not discriminatory on its face, and plaintiffs have introduced no evidence that it discriminates against interstate commerce in its purpose or in its operation.  The language of the Ordinance does not facially discriminate against interstate commerce because it makes no distinction between property owners from Louisiana and out-of-state property owners. *Cf. Old Coach Development Corp., Inc. v.*

35

*Tanzman*, 881 F.2d 1227, 1232 (3d Cir. 1989) (invalidating New
Jersey regulatory scheme that imposed requirements and costs on
sellers of out-of-state land which were not imposed on sellers of
New Jersey land).  Because all persons who own property in St.
Bernard Parish, with a few exceptions, are prohibited from
renting their properties without first obtaining a Permissive Use
Permit, the Ordinance does not confer any sort of competitive
advantage upon local businesses *vis-à-vis* out-of-state
competitors. *See Ford Motor Co. v. Texas Dept. of Transp.*, 264
F.3d 493 (5th Cir. 2001) (in analyzing dormant Commerce Clause
claim, courts look at the legislation's "effect on similarly
situated business entities."). Nor have plaintiffs introduced
any evidence that the Ordinance was enacted for the purpose of
discriminating against out-of-state interests, or that it imposes
costs on out-of-state interests that in-state interests would not
have to bear. *Cf. C & A Carbone, Inc. v. Town of Clarkstown,
N.Y.*, 511 U.S. 383, 392 (1994) (finding unconstitutional local
ordinance requiring that solid waste processed or handled within
town be processed or handled at town's transfer station).

Defendant has introduced evidence that the Ordinance is
directed to legitimate local concerns, the maintenance of
property values for *all* homeowners. *See Texas Manufactured
Housing Ass'n*, 101 F.3d at 1104 n.10 ("Maintenance of property
values has long been recognized as a legitimate objective of

36

local land use regulation."). Defendant further contends that the Ordinance is not discriminatory in its effect. Jerry Graves attests that, as of July 2, 2008, nine out of thirty-eight Permissive Use Permits, or nearly 25% of permits that had been granted, had been granted to out-of-state applicants. (Graves Supp. Aff., R. Doc. 61-10, ¶ 3.) That the Ordinance does not discriminate on the basis of geography is further demonstrated by the fact that this action includes plaintiffs who are residents of St. Bernard Parish.

Because there is no evidence before the Court that the Ordinance clearly discriminates against interstate commerce, the Court turns to an assessment of the Ordinance under the *Pike* balancing test and considers whether the burden it imposes on interstate commerce is clearly excessive in relation to the putative local benefits. The Court recognizes that "it is a transparently commercial action to buy, sell, or rent a house," *Groome*, 234 F.3d at 206, and further that a complete ban on renting property would have some affect on interstate commerce to the extent that out-of-state plaintiffs would not be able to rent their properties, and therefore would not be able to engage in an interstate commercial transaction. *Id.* However, "[t]he crucial inquiry .. must be directed to determining whether [the statute] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with

effects upon interstate commerce that are only incidental." *Texas Manufactured Housing Ass'n*, 101 F.3d at 1101 (quoting *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978)).  As the Court understands plaintiffs' contentions in their supplemental memorandum, they aver that the Ordinance precludes out of state investment, and burdens interstate commerce, because it prevents out of state homeowners from renting their properties, and they cannot live in them, therefore removing any economic value of the property.  At this point, it is not evident that plaintiffs have demonstrated a burden on interstate commerce at all. *See Wood Marine Service*, 858 F.2d at 1065 ("Before the standards derived from the Commerce Clause are applied some burden must be established.").  First, plaintiffs have not proffered any credible evidence that the Ordinance prevents out-of-state homeowners from renting their property.  Although the Ordinance requires that plaintiffs obtain a Permissive Use Permit before renting their properties, it does not outright prohibit rentals.  Only one of the plaintiffs has even applied for a Permissive Use Permit, and it was granted.  At least nine out-of-state applicants that have applied for a Permissive Use Permit have had them granted. (Graves Supp. Aff. ¶ 3.)[11]  Further, plaintiffs have not come forward with any evidence regarding the extent of

---

[11] Graves' supplemental affidavit does not include how many out-of-state persons or companies have submitted applications for Permissive Use Permits.

38

the burden, if any, the Ordinance imposes on interstate commerce.

Plaintiffs have also alleged in their dormant Commerce Clause claim that the putative purpose of the law is "illusory," and therefore in conducting the *Pike* balancing test, the Court should find that the Ordinance does not have a legitimate purpose, and therefore its burden on interstate commerce cannot be justified.  While plaintiffs are correct that in evaluating legislation that impacts interstate commerce, courts can consider the language of the statute, how it operates, and how its operation affects interstate commerce, ultimately the purpose of this review is to evaluate the burden on interstate commerce. The dormant Commerce Clause is not available to challenge the legitimacy of statutes that do not burden interstate commerce. Plaintiffs do not connect their allegations that the Ordinance's purpose is "illusory" with any sort of deleterious effect on interstate commerce.

As plaintiffs have not met their burden of persuasion in moving for a preliminary injunction of showing that the Ordinance imposes a burden on interstate commerce, the Court cannot evaluate any such alleged burden in relation to the putative benefits of the Ordinance.  Based on plaintiffs' lack of evidence that the Ordinance imposes a burden on interstate commerce, the Court finds that plaintiffs have not shown a substantial likelihood of prevailing on their claim that the Ordinance

violates the dormant Commerce Clause.

**IV.   CONCLUSION**

For the foregoing reasons, plaintiffs' motion for a
preliminary injunction is DENIED.  The Court's April 3, 2008
Order issuing a Consent TRO is VACATED.


New Orleans, Louisiana, this <u>18th</u> day of August, 2008.


_____

                 SARAH S. VANCE
          UNITED STATES DISTRICT JUDGE