UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDREW BAKER, ET AL.                    CIVIL ACTION

VERSUS                                  NO: 08-1303

ST. BERNARD PARISH COUNCIL              SECTION: "R"(3)


**ORDER AND REASONS**

Before the Court are several motions in *Baker v. St. Bernard Parish Council*. Defendant and plaintiffs have both sought summary judgment. In addition, plaintiffs' seek to amend their complaint for a fourth time and request attorney's fees in connection with this Court's order sanctioning St. Bernard Parish. For the following reasons, the Court GRANTS defendant St. Bernard Parish's motion for summary judgment, DENIES plaintiffs' cross-motion for summary judgment and GRANTS plaintiffs' request for fees in part.[1]

**I.   BACKGROUND**

On March 17, 2008, plaintiffs sued the St. Bernard Parish Council, seeking injunctive relief, a declaratory judgment, and

---

[1] In addition, plaintiffs seek leave to file the affidavit of Scott McDougal in further opposition to defendant's motion for summary judgment. (R. Doc. 80.) This affidavit is largely redundant with the affidavit of Dean Latusek (R. Doc. 94-2 at 7-10), but nonetheless relevant to plaintiffs' dormant Commerce Clause claim. Leave to file is GRANTED.

damages.[2] (Compl., R. Doc. 1.)  Plaintiffs allege that St. Bernard Parish Council Ordinance #697-12-06 constitutes a takings without just compensation, in violation of their Fifth Amendment rights, and that the Ordinance further violates plaintiffs' Fourteenth Amendment due process rights. (Compl. ¶¶ 23-30.)

>    1.    *History*

Plaintiffs allege that the widespread flooding in St. Bernard Parish after Hurricane Katrina created a severe housing shortage. (*Id.* ¶ 5.)  In response to the housing shortage, St. Bernard Parish Council (hereinafter "St. Bernard," or "the Parish") passed a series of ordinances involving rental properties. (*Id.*)  On October 2, 2006, for example, St. Bernard enacted Ordinance SBPC #670-09-06, which came to be known as the "blood relative ordinance."  The ordinance prohibited persons from renting, leasing, loaning, or otherwise allowing occupancy or use of any single-family residence other than by family members related by blood, without first obtaining a Permissive Use Permit from the St. Bernard Parish Council. (Compl. ¶ 6.)  In November of 2006, Wallace Rodrigue and the Greater New Orleans

---

[2] The original plaintiffs are Andrew Baker, Chad Baker, Robert Baker, Turpin Barrett III, Dan Brenneman, Rodney Brenneman, Jesse Chase, David Choate, Michael Dean, Homer Duff, Ike Fountain, Ken Fountain, Janice Haitfield, John Huckeba, Mike Johnson, Kimberly Knaisch, John Lake, Robert Sampson, Joe Stagman, Greg Tapp, Fred Vogler, Michael Wambach, Vickie Wambach, James Welch, Kevin Wing, Your Home Solution Louisiana, LLC, and Your Home Solution Management, LLC.

Fair Housing Action Center moved to enjoin the operation of the blood relative ordinance. *See Greater New Orleans Fair Housing Action Center v. St. Bernard Parish*, Civ. A. 06-7185 (filed Oct. 3, 2006).

In February of 2008, the parties entered a Consent Order resolving the blood relative ordinance litigation. *See id*. (Consent Order, R. Doc. 114, Feb. 28, 2008).   Judge Berrigan exercises jurisdiction over the Consent Order, which is to continue for three years. (*Id.*)   Pursuant to the Consent Order, St. Bernard Parish rescinded the blood relative ordinance and is permanently enjoined from re-enacting it.   Further, the Greater New Orleans Fair Housing Action Center continues to monitor applications for Permissive Use Permits made pursuant to Ordinance SBPC #697-12-06 (hereinafter "Ordinance 12-06," or "the Ordinance"), the Ordinance that St. Bernard passed on December 19, 2006, and the Ordinance plaintiffs challenge in this action. (*See also* Compl. ¶¶ 8-9.)

> 2.   *Ordinance 12-06*

On January 4, 2007, Ordinance 12-06 took effect when it was signed into law by Parish President Henry Rodriguez, Jr. ("Ordinance 12-06," R. Doc. 5-2.)   Ordinance 12-06 is nearly identical to the blood relative ordinance except that it does not have the specific blood relative requirement language, and it adds a clause stating that the ordinance shall preserve the

constitutional rights of all persons for home ownership. (*Id.;
see also* Compl. ¶ 14.)  The preamble to the Ordinance provides
that it is meant to "encourage single family residence owners to
return, rebuild, and resume living in the parish and to reoccupy
their homes ... to maintain the integrity and stability of
established neighborhoods ..." and "to foster and encourage a
community and family atmosphere in the neighborhoods of St.
Bernard Parish." (Ordinance 12-06.)  In its original version, the
ordinance provided:

> No person or entity shall rent, lease, loan, or otherwise
> allow occupancy or use of any single family residence
> located in an R-1 zone by any person or group of persons,
> without first obtaining a Permissive Use Permit from the
> St. Bernard Parish Council.

The ordinance further provided that any person or entity that
allowed occupancy or use of the property, or any person over the
age of majority who occupied or used any property in violation of
the Ordinance was guilty of a misdemeanor and subject to a fine
for each day of violation of the Ordinance. *Id*.

     On June 17, 2008, the Parish Council amended Ordinance 12-
06, to remove all penalty provisions applicable to tenants, and
to clarify that the Ordinance applies only to rentals, and not
gratuitous uses. (*See, e.g.,* Taffaro Supp. Aff., R. Doc. 61-5, ¶
6; *see also* Ordinance SBPC #865-06-08, R. Doc. 61-6.)  The
Ordinance now provides as follows:

> No person or entity shall rent, or lease, directly or
> indirectly, any single family residence located in an R-1

4

zone, without first obtaining a Permissive Use Permit
from the St. Bernard Parish Council.

(R. Doc. 61-7.)  Further, on June 10, 2008, Craig Taffaro,
President of the Parish Council, issued Executive Order #05-08,
which provides that any Notices of Violation of the Ordinance
shall refer only to the means of enforcement set forth in the
Ordinance, and will not threaten to disconnect utility services.
(Taffaro Supp. Aff. ¶ 7; Exec. Ord. #05-08, R. Doc. 61-8.)  The
Ordinance does not apply to single family residences that were
rental residences before the adoption of the Ordinance, and also
does not apply to not-for-profit corporations.

In order to obtain a Permissive Use Permit, a pre-requisite
to renting a single family residence, an individual must present
his or her application for a Permit to the St. Bernard Parish
Planning Department, which reviews the application and issues a
recommendation to the Parish Council.  The application includes a
$250.00 application fee. (Taffaro AFf., R. Doc. 35-2, ¶ 8.)  The
Parish uses four approval criteria for determining whether to
grant a Permissive Use Permit for an R1 dwelling:

1.    The history of any properties within a one thousand
      (1,000) foot radius being used as rental
      properties.

2.    The volume of rental properties shall not exceed 2
      R1 Permissive Use Permit rental properties within
      five hundred (500) linear frontage feet of
      contiguous R1 dwellings.

3.    The availability of R1 homes used as rental
      properties within the boundaries of St. Bernard

5

Parish at the time of the request.

4.   The level of compliance exhibited by the property
     owner in maintaining other rental properties within
     St. Bernard Parish.

(Pls.' Compl. ¶ 18; *see also* Compl. Ex. A, R. Doc. 1-3 at 5.)
These approval criteria are attached to application packets, and
state that they are "to be used as a 100% test method, meaning
that all four (4) criteria should be met in order for
recommendation of approval to be granted." (*See id.*)  The Parish
Planning Department considers the approval criteria when deciding
whether to recommend to the Council that it grant a Permissive
Use Permit.  At one point, ten other criteria were proposed for
determining when to grant a Permissive Use Permit, which included
school system resources, Sheriff's department resources,
electrical utility grid requirements, and road, public lighting,
and sidewalk infrastructure conditions. (Compl. ¶ 21.)  Taffaro
states in his affidavit that these additional ten criteria were
background factors used to decide on the four criteria currently
used, but "have never been used in any stage of the permitting
process." (Taffaro Aff. ¶ 9.)  Finally, the Ordinance provides
that after the Parish Council makes a decision pursuant to the
provisions of the Ordinance, such decision can be appealed to the
district courts of St. Bernard Parish.

     3.   *Plaintiffs' Allegations*

The plaintiffs who filed the first complaint in this matter

6

all purchased property in St. Bernard Parish before the Parish passed Ordinance 12-06.  They entered into management agreements with plaintiffs Your Home Solution Management, LLC and Your Home Solution Louisiana, LLC (collectively, "Your Home Solution" or "YHS"), for the purpose of renting or leasing to purchase their properties. (Compl. ¶ 10.)  Plaintiffs allege that on February 14, 2008, St. Bernard Parish served one of the plaintiffs, Your Home Solution, with an Order to Cease and Desist from engaging in illegal construction and occupancy of approximately 50 houses located in St. Bernard Parish because of its failure to obtain Permissive Use Permits pursuant to Ordinance 12-06. (Compl. ¶ 11.)  The next day, St. Bernard Parish served Your Home Solution with a Notice of Violation of Ordinance 12-06 for a property at 3809 Riverland Drive in Chalmette. (Compl. ¶ 13; *see also* Pls.' Compl. Ex. C.)  The notice stated that Your Home Solution was in violation because it did not have a Permissive Use Permit as required by the Ordinance. (*Id.*)

Plaintiffs allege that "Ordinance 12-06, separate and distinct from any potential discriminatory aspects, is equally unconstitutional in that it constitutes such an 'unduly oppressive' regulation upon land use as to constitute either a Fifth Amendment 'taking' or a Fourteenth Amendment violation of due process." (Compl. ¶ 15.)  On April 11, 2008, counsel for plaintiffs filed an amended and supplemental complaint adding 17

individuals and seven additional LLCs as plaintiffs.[3] (Amend. Compl., R. Doc. 9.)  Plaintiffs also filed a third amended complaint on June 24, 2008, alleging that the Ordinance violates the dormant Commerce Clause of the U.S. Constitution.[4] (R. Doc. 58.)

> 4.   *Procedural Posture*

Shortly after filing suit, on April 3, 2008, plaintiffs moved for a temporary restraining order (TRO) and reiterated their prayer for a preliminary injunction. (R. Doc. 5.)  The Court entered a Consent TRO that same day, generally prohibiting and restraining St. Bernard from enforcing or implementing Ordinance 12-06 against Complainants and further prohibiting St. Bernard from taking steps to enforce Ordinance 12-06 by way of disconnecting utility services to tenants occupying houses owned by Complainants. (Consent TRO, R. Doc. 6).[5]  On April 17, 2008,

---

[3] Additional plaintiffs include: Antoine R. Barreca, Corinne L. Barreca, Paul Dicocco, Janet Dicocco, John P. DiPietro, Judy Galarza, Ron Galarza, Ken James, Thomas Vita, Gina Hume, David Hume, Minh Quach, Patricia Quach, Tam Quach, Jay V. Suarez, Valerie Warren, James Wilks, R.E. Breaux Company, LLC, James & Vita, LLC, J&G Holdings and Investments, LLC, Newpoint Properties, LLC, R&J Investments 67, LLC, R&J Investment 3720, LLC, and Satchmo Properties, LLC.

[4] The third amended complaint also adds the following plaintiffs: New Eastern Ventures, Inc., Matt Holcomb, Jerry D. Moore, Okechukwu Okafor, E&M Global Properties, LLC, Eli Chen, Moishe Sharagin, and E&Y Properties, LLC.

[5] The TRO stated, in pertinent part: "IT IS ORDERED THAT A Temporary Restraining Order issue herein and that the St. Bernard Parish Council is prohibited and restrained from enforcing or

8

plaintiffs filed a motion for civil contempt and sanctions against St. Bernard, alleging a variety of actions by defendant and its employees in violation of the TRO's constraints. (R. Doc. 10.)

On June 3, 2008, the Court held a preliminary injunction hearing and heard oral argument on plaintiffs' motion for sanctions.  Plaintiffs then advised the Court that they wished to amend the complaint once again.  Accordingly, the Court granted the plaintiffs leave to amend the Complaint and instituted a briefing schedule for any amendment. (*See* Order, R. Doc. 56, Jun. 6, 2008.)  The Court denied plaintiffs' motion for preliminary injunction and vacated the TRO on August 18, 2008 because plaintiffs failed to establish a likelihood of success on the merits for any claim.  (R. Doc. 91.)

St. Bernard Parish has filed a motion for summary judgment, contending plaintiffs' allegations are subject to dismissal as a matter of law. (R. Doc. 61.)  Plaintiffs in turn have filed a cross motion for summary judgment, (R. Doc. 70), and seek to amend the complaint a fourth time. (R. Doc. 79)  The proposed

---

implementing against Complainants an ordinance passed on December 19, 2006, known as Ordinance #697-12-06 ("Ordinance 12-06"), requiring property owners wishing to rent, lease, or lease-to-own properties to first obtain a "Permissive Use Permit" from the St. Bernard Parish Council from taking steps against Complainants to enforce Ordinance 12-06 by ordering "all utility service [to be] disconnected" from the tenants occupying houses owned by Complainants." (Consent TRO, R. Doc. 6.)

amendment does not allege any new claims for relief, but seeks to add the following parties: Treevis Properties, LLC, Brad Schaeffer, Scott McDougal, Denny Reichert, Dean Latusek, Scott Richoux, Pete Woodard, Ryan Ottman and Shirley Barreca. (R. Doc. 79.)

## II.  LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts

10

to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1996).

## III. DISCUSSION

Plaintiffs' original complaint alleges violations of the Fifth and Fourteenth Amendments.  Plaintiffs' third amended complaint alleges that defendant has violated the dormant Commerce Clause.  The Court previously addressed these claims in its order denying plaintiffs' motion for preliminary injunction. (*See* R. Doc. 91.)  Plaintiffs repeatedly assert that the Court's order denying preliminary injunction treated plaintiffs' claims as "facial challenges," and now urge the Court to consider their claims as "as applied" challenges to the Ordinance.  The Court has always viewed plaintiffs' claims as "as applied" challenges, and plaintiffs have offered no new arguments that persuade the Court that plaintiffs' claims have merit.  As such, the Court incorporates much of its analysis from the order denying a preliminary injunction.

1.   *Takings*

Plaintiffs allege that "their property values have been diminished by the actions of St. Bernard and by the promulgation and attempted enforcement of Ordinance 12-06 for which they are entitled to just compensation." (Compl. ¶ 26.)  Plaintiffs also aver that the Ordinance deprives them of their "rights to use, enjoy the fruits of and alienate their property," (R. Doc. 70-3 at 4-5), and that the "intimidating, irrational, oppressive and indefensible process" required to obtain a Permit is "unduly oppressive." (*Id.* at 8).

This Court must first assess whether plaintiffs' claims are ripe for review.  Plaintiffs argue that the Parish should be estopped from contesting the ripeness of plaintiffs' claims because the Parish has delayed processing applications in an alleged effort to evade review.  Ripeness is a question of this Court's Article III jurisdiction.  *See United Transp. Union v. Foster*, 205 F.3d 851, 857(5th Cir. 2000).  Even if defendants had not challenged the ripeness of this case for adjudication, the Court would be required to consider the matter *sua sponte*.[6]  *Id.*

In a takings case ripeness is assessed under the two-prong test elucidated in *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985).  Under the *Williamson*

---

[6] Plaintiffs' claims of delay are relevant to whether state law affords an adequate remedy.  Those claims, however, fail for reasons stated *infra.*

*County* test, a takings claim is ripe when: (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue;" and (2) the plaintiff "seek[s] compensation through the procedures the State has provided," unless such procedures are unavailable or inadequate. *Id.* at 186, 194, 197.

Under the first prong of the *Williamson County* test, the U.S. Supreme Court has found no ripeness when a case involves a matter that has not been finally decided. Specifically, in cases claiming a government taking without just compensation, a matter has been held unripe when the regulatory entity has not reached a final decision *vis-à-vis* the regulation's application to the property in question. *See Williamson County, supra; Brandywine, Inc. v. City of Richmond, Kentucky*, 359 F.3d 830, 834 (6th Cir. 2004). The Supreme Court requires that the land use authority have the opportunity to decide and explain the reach of a challenged regulation "using its own reasonable procedures." *Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001). "As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established." *Id.* at 621. The Fifth Circuit, too, has found takings claims unripe when the property owner has "ignored or abandoned some relevant form of

13

review or relief, such that the takings decision cannot be said to be final." *Urban Developers, LLC v. City of Jackson*, 468 F.3d 281, 293 (5th Cir. 2006).

To meet the second prong of the *Williamson County* ripeness test, a movant must also show that compensation for the alleged taking has duly been sought and denied via all available administrative procedures. *Williamson County*, 473 U.S. at 186-187. "The Fifth Amendment does not proscribe the taking of property; it proscribes the taking without just compensation." *Id.* at 194.  As a result, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  *Id.* This includes relevant state procedures, such as inverse condemnation proceedings. *Id.* at 196.  The Fifth Circuit has interpreted this requirement as meaning that a plaintiff asserting a taking must first "present its inverse condemnation action to the state court in a posture such the state court could rule on [the] claim," before coming to federal court.  *Liberty Mut. Ins. Co. v. Brown,* 380 F.3d 793, 798 (5th Cir. 2004).

No plaintiff has satisfied the second prong of the *Williamson County* test.

Plaintiffs argue that *Williamson County's* requirements should not apply because the state proceedings in question are

14

inadequate.  It is true that a plaintiff is not required to seek compensation when "the state *would* deny a claimant compensation were he to undertake the obviously futile act of seeking it." *Samaad v. City of Dallas*, 940 F.2d 925, 934 (5th Cir. 1991) (emphasis in original).  But it is clear that Louisiana state proceedings are legally adequate to handle plaintiffs' takings claim.  Despite plaintiffs' assertion to the contrary, Louisiana recognizes an inverse condemnation cause of action for regulatory takings, *see, e.g., State Through Dept. of Transp. and Development v. Chambers Inv. Co.*, 595 So.2d 598, 602 (La. 1992), and plaintiffs have not taken advantage of it.  Plaintiffs argue in their Rebuttal (R. Doc. 105) that a state inverse condemnation proceeding would be inadequate because Louisiana courts will not find a regulatory taking under the Louisiana Constitution unless the regulation "destroys a major portion of the property's value." *Annison v. Hoover*, 517 So.2d 420, 423 (La. Ct. App. 1987).  This is not so much an argument that state remedies are inadequate as an admission that plaintiffs have a bad takings claim.  Under the Federal Constitution, plaintiffs face a similarly high burden in showing that the Ordinance significantly deprives plaintiffs of the economic value of their property.  *See Euclid v. Amber Realty Co.*, 272 U.S. 365 (1926)(zoning law sustained despite 75% diminution in value); *Hadacheck v.Sebastian*, 239 U.S. 394 (1915)(87 1/2% diminution in value).

15

Regardless, plaintiffs must show more than that they will have a difficult time prevailing in state court.  Plaintiffs must show it would be "obviously futile" for them to pursue an inverse condemnation suit.  They have not done so.

Plaintiffs contend that St. Bernard Parish has obstructed their ability to exhaust administrative remedies by either letting applications languish or by failing to act on applications the Planning Commission has recommended for denial. But St. Bernard's alleged delay does not excuse plaintiffs' failure to satisfy the second prong of the *Williamson County* test.  *Williamson County* requires plaintiffs to not only pursue administrative remedies but also to seek compensation through all available state procedures including filing an inverse condemnation suit.  *Williamson County*, 473 U.S. at 186, 194, 196. St. Bernard's alleged delay can be addressed in the Louisiana inverse condemnation proceeding that is available to plaintiffs and that plaintiffs are required to pursue before bringing a suit in federal court.  *Williamson County*, 473 at 194 n.13; *Liberty Mut. Ins. Co. v. Brown*, 380 F.3d 793, 798 (5th Cir. 2004)(holding takings claim unripe where plaintiff failed to pursue Louisiana inverse condemnation proceeding in state court).  Though Louisiana also requires exhaustion of administrative remedies before filing an inverse condemnation suit, this does not make resort to the Louisiana courts futile.  Louisiana courts have

waived the exhaustion requirement when the administrative procedure is inadequate both in inverse condemnation proceedings, *see Polk v. State, Through Dept. of Transp. and Dev.*, 517 So.2d 1178 (La. Ct. App. 1987), and under other statutes requiring the exhaustion of administrative remedies. *See, e.g., Kenner Firefighters Ass'n Local No. 1427 v. City of Kenner*, 685 So.2d 265 (La. Ct. App. 1996) *Waggoner v. American Bank and Trust Co.*, 423 So.2d 794 (La. Ct. App. 1982); *Michell v. Louisiana State Bd. of Optometry Examiners*, 128 So.2d 825 (La. Ct. App. 1961). Before filing a takings claim in federal court (and arguing that administrative remedies are inadequate), plaintiffs must pursue compensation through all available state court proceedings (where their argument that administrative remedies are inadequate is equally available). Here, plaintiffs have simply not shown that state law procedures "*almost certainly* will not justly compensate the claimant," *Samaad*, 940 F.2d at 934 (emphasis in original), because they are free to contest the Ordinance and the Parish's alleged inaction in state court.

Plaintiffs also assert that the Parish's delay in processing applications is itself a taking under *Tahoe-Sierra Preservation v. Tahoe Regulatory Planning*, 535 U.S. 302 (2002). Even if a temporary taking allegation were sufficient to circumvent *Williamson County's* ripeness requirements, any delay here is not "extraordinary" enough to constitute a taking. *See Wyatt v.*

17

*U.S.*, 271 F.3d 1090, 1098 (Fed. Cir. 2001). "Other courts have recognized that extraordinary delay must be 'substantial' and the Supreme Court has condoned delays up to 'approximately eight years.'" *Id.* (citations omitted).  The Court has reviewed the backlog of applications and determined no extraordinary delay is present.  Plaintiffs specifically draw the Court's attention to the application of David Hume, originally dated 11/4/07. Defendant states that Mr. Hume's application was not complete until April 15, 2008, and attach a copy of his application to corroborate. (R. Doc. 99-2.) Plaintiffs' rebuttal does not contradict this.  Even granting plaintiffs' assertion that we must take into account the "non-complexity" of the Parish's Permit process, (R. Doc. 105 at 3), the Court finds that any delay in processing falls well short of extraordinary.

Plaintiffs further rely on the Fifth Circuit's opinion in *Patsy v. Florida International University*, 634 F.2d 900 (5th Cir. 1981), for the proposition that they are not required to exhaust their state remedies.  *Patsy* was overruled by the Supreme Court, 457 U.S. 496 (1982), and is not a takings case.  The relevant inquiry, as set forth in *Williamson County*, is whether plaintiffs have sought compensation through all state remedies including an inverse condemnation proceeding.  Only then can the Court inquire into whether a taking has occurred without just compensation.

It is uncontested that all but one of the plaintiffs' listed

18

in the third amended complaint have filed suit either without
filing an application or obtaining a final determination, and the
one plaintiff who did receive a final determination was granted a
permit.  (R. Doc. 61-3 at ¶10,11.) None has sought compensation
through an inverse condemnation proceeding.  Because plaintiffs
have failed to seek compensation in state court, their takings
claims are not ripe.

### 2.  *Due Process*

Plaintiffs allege that the Ordinance violates their
Fourteenth Amendment due process rights because it has no
rational basis for achieving a legitimate public purpose, it
"uses unreasonable, intimidating, irrational, oppressive and
indefensible methods for controlling land use," and is "so unduly
oppressive ... that it constitutes an impossibility." (Compl. ¶
29.) Plaintiffs do not specify whether the challenge is a
procedural or substantive due process challenge, accordingly, the
Court addresses both types of due process claims.[7]

---

[7] "Procedural due process promotes fairness in government
decisions '[b]y requiring the government to follow appropriate
procedures when its agents decide to deprive any person of life,
liberty, or property.'" *John Corp. v. Houston*, 214 F.3d 573, 577
(5th Cir. 2000) (quoting *Daniels v. Williams*, 474 U.S. 327, 331
(1986)).  "Substantive due process 'by barring certain government
actions regardless of the fairness of the procedures used to
implement them, [] serves to prevent governmental power from
being used for purposes of oppression.'" *Id.* (quoting *Murray's
Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)).

i.   Procedural Due Process

The Supreme Court has held that procedural due process requirements do not apply to legislative actions. *See, e.g., BiMetallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 445 (1915) (noting that when Congress passes legislation, individual "rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule."). Generally applicable legislative and quasi-legislative decisions, "are not subject to procedural due process constraints, even though they result in a deprivation of a recognized liberty interest. Rather, such decisions are subject only to substantive due process analysis." *Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1149 (5th Cir. 1997). When an elected body, such as a City Council, makes a zoning decision, the Fifth Circuit characterizes the action as legislative or "quasi-legislative," thereby "negating procedural due process claims." *Jackson Court Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989); *see also Christensen v. Yolo County Bd. of Sup'rs*, 995 F.2d 161, 166 (9th Cir. 1993) ("Zoning decisions that affect a large number of people ... do 'not ordinarily give rise to constitutional procedural due process requirements.'")(quoting *Harris v. County of Riverside*, 904 F.2d 497, 502 (9th Cir. 1990)).

For example, in *Jackson Court*, the former owner of a

condominium complex sued the City of New Orleans after the City
Council passed a municipal ordinance prohibiting the
establishment of time-share condominiums in residential areas.
The City Council was concerned that the increasing development of
time-share condominiums would have a deleterious effect on the
city's historic neighborhoods. *Id.* at 1072.  The Council also
refused to grant plaintiff an exemption from the moratorium under
a waiver provision.  Before the City enacted the ban on time-
shares, plaintiff had purchased a 21-unit apartment building on
the edge of the Garden District with the intent of transforming
the apartments into luxury time-share condominiums.  Plaintiff
had invested $1.2 million in the property for that purpose and
therefore applied for a waiver from the time-share moratorium.
The City Council denied plaintiff's application. *Id.* at 1073.
The plaintiff sued the City of New Orleans in federal court,
raising a number of 42 U.S.C. § 1983 claims, including that it
was denied procedural due process, substantive due process, and
that the Ordinance effected an unconstitutional taking.  The
Fifth Circuit affirmed the district court's summary judgment
ruling for the City on all of plaintiff's constitutional claims.
With respect to the *Jackson Court* plaintiff's procedural due
process claim, the Fifth Circuit noted that zoning decisions are
to be reviewed under the same constitutional standards employed
to review statutes enacted by state legislatures, and it

therefore held that because the action was legislative,
procedural due process requirements did not apply.

Ordinance 12-06 is applicable to all single family
residences located in an R-1 zone in St. Bernard Parish and
therefore is a generally applicable legislative or "quasi-
legislative" decision.  The Court finds, as the Fifth Circuit did
in *Jackson Court*, that the Ordinance St. Bernard Parish enacted
"was a legislative decision of broad applicability by an elected
City Council, and hence no procedural due process rights attach."
*Jackson Court*, 874 F.2d at 1076.

Plaintiffs ask the Court to reconsider plaintiffs'
challenges to the Ordinance "with greater emphasis on the 'as
applied' aspects of the case." (R. Doc. 94 at 1.)   To that
effect, plaintiffs' supplemental memorandum alleges ten specific
due process violations.  (R. Doc. 94 at 30-34.) Seven of the
alleged violations do not involve plaintiffs in this lawsuit,[8]
and the rest do not raise enforcement issues implicating a more
searching due process review.  For example, Ralph Brenneman avers
that he was told the application process could take up to seven
months, that a Permit could not be guaranteed, and that no Permit
would be forthcoming while properties were occupied without a
Permit.  (R. Doc. 105 at 33).  This is essentially a complaint

_____

[8]  These non-plaintiffs include Jimmy Toups, Carlo James,
Zachery Alveris, Courtney and Russell Beaty, Rebecca Brown,
Shirley Roggers and Treevis Properties.  (R. Doc. 94 at 30-34).

that the application process exists and is time-consuming.  But
as explained above, a generally applicable permitting scheme of
this kind does not implicate due process concerns.  Equally
merit-less is Jay Suarez's claim that publicity from the
ordinance has adversely affected the property values of his
homes.  (R. Doc. 105 at 34.)  Mr. Suarez simply has no due
process right, either procedurally or substantively, to be free
from the effects of adverse publicity on the value of his
properties.  Okechukwu Okafor asserts that he was arrested after
instructing a tenant to break a lock placed on the tenant's water
line because Okafor was not in compliance with the Ordinance.
Okafor's arrest, however, was pursuant to Louisiana's statutes
for theft of a utility service, La. Rev. Stat. § 14:67.6, and
simple criminal damage to property, La. Rev. Stat § 14:56; not
the Ordinance.  While the enforcement against Okafor's tenant by
cutting off utilities without notice might present due process
problems, the Court once again refuses to address this contention
because none of the plaintiffs or proposed plaintiffs is a
tenant, (Prelim. Inj. Hr'g Tr. at 14:11:14) (Court: None of the
plaintiffs in this case are tenants, right, or are they?  Mr.
Klein: I have no tenants, Your Honor."), and the Parish Council
has amended the Ordinance to remove all provisions that provided
for enforcement of the Ordinance against tenants. (*See* R. Doc.
61-7) (reflecting language stricken from Ordinance 12-06.)

ii.   Substantive Due Process

The Court interprets plaintiffs' substantive due process claim as an allegation that the Permissive Use Permit application process is so "oppressive" that the Ordinance violates the substantive due process rights of those subject to it. (*See* Compl. ¶¶ 27-30.) (alleging that 12-06 "has no rational basis for achieving a '...legitimate public purpose...'", "uses unreasonable, intimidating, irrational, oppressive and indefensible methods for controlling land use," and "is so unduly oppressive upon landowners that it constitutes an impossibility.") The "unduly oppressive" nature of the ordinance includes the process and criteria for obtaining a Permit, the disclosures required for obtaining a permit, the $250 application fee, and potential penalties for violating the Ordinance.

Substantive due process challenges to zoning regulations are analyzed under the rational basis standard.  Under this standard, a zoning decision will be upheld if it has a rational relationship to a legitimate government interest. *See Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1044 (5th Cir. 1998); *Shelton v. City of College Station*, 780 F.2d 475, 477 (5th Cir. 1986) (holding that decisions of state zoning boards do not violate substantive due process unless the court finds no 'conceivable rational basis' on which the board might have based its decision).  Rational basis review is an extremely lenient

24

standard of review; therefore "[a]ttacks against zoning
ordinances under this test are rarely successful." *Wood Marine
Service, Inc. v. City of Harahan*, 858 F.2d 1061, 1066 (5th Cir.
1988) (citing *Shelton*, 780 F.2d at 479); *see also Euclid v.
Ambler Realty Co.*, 272 U.S. 365, 395 (1926) (an ordinance is not
to be declared unconstitutional unless "clearly arbitrary and
unreasonable, having no substantial relation to the public
health, safety, morals, or general welfare.").

Here, defendant has stated that its purpose in enacting the
Ordinance was to stabilize the housing market in St. Bernard
Parish, and to "encourage single family residence owners to
return, rebuild, and resume living in the parish and to reoccupy
their homes in already long established neighborhoods."[9] (12-06
Ordinance at 7.)  This is a rational and permissible basis for a
land use restriction. *See, e.g., Jackson Court Condominiums*, 874
F.2d at 1078 ("Certainly the protection of residential integrity

---

[9]  Plaintiffs assert that the Parish should be estopped from
asserting that this is the Ordinance's purpose because of their
alleged failure to process applications.  The Court does not find
the doctrine of estoppel applicable.  "The doctrine of judicial
estoppel prevents a party from asserting a claim in a legal
proceeding that is inconsistent with a claim taken by the party
in a prior proceeding."  18 Moore's Federal Practice § 134.20, p.
134-62.  The Ordinance itself states that its purpose is to
"encourage single family residence owners to return, rebuild, and
resume living in the parish and to reoccupy their homes in
already long established neighborhoods" and the Parish has
maintained that position throughout these proceedings.  Since the
Parish has not argued a contradictory purpose it cannot be
estopped from continuing to argue that purpose now.

is a legitimate objective of a zoning regulation."). Further, in *Texas Manufactured Housing Ass'n*, *Inc. v. Nederland, City of*, 101 F.3d 1095 (5th Cir. 1996), the Court upheld an ordinance that required lot owners to get a permit from the city before placing manufactured homes on their property, and in doing so indicated that a zoning ordinance would pass muster if it was "at least debatable" that its restrictions served the ordinance's proffered purpose. *Id.* at 1106 (citing *Shelton*, 780 F.2d at 483).

Plaintiffs conceded during oral argument on the motion for preliminary injunction that there is a rational basis for the Ordinance: "I will concede, Your Honor, that having a law or an ordinance that has as a goal avoiding blight, that has as a goal avoiding the diminution of property values across the board, is not an unreasonable goal.  That is not an unreasonable goal." (Prelim. Inj. Hr'g Tr. at 9:20-24.)  Plaintiffs responds to this admission in their rebuttal: "While we have conceded that the goal of protecting property values and avoiding blight is generally legitimate, we have <u>never</u> conceded that <u>this</u> ordinance is 'rational' or that the alleged governmental interest is 'legitimate.'" (R. Doc. 105 at 2.)  In an apparent effort to have the Court scrutinize the Ordinance's purpose more closely, plaintiffs repeatedly assert that the Ordinance is the result of racial animus by the Parish and (once again) urge the Court to take judicial notice of the record in *Greater New Orleans Fair*

*Housing Action Center v. St. Bernard Parish*, Civ. A. 06-7185
(filed Oct. 3, 2006).  The Court has already noted that the
Parish's permitting process is being actively monitored under a
consent decree issued in that litigation.  Despite the fact that
plaintiffs have amended their complaint three times and seek to
amend it a fourth, no complaint filed in this case alleges a
claim of racial discrimination.  As a result, this Court is
restricted to the deferential rational basis review set forth in
*Shelton v. City of College Station*, 780 F.2d at 477.

In *Shelton v. City of College Station,* the Fifth Circuit
reflected on how difficult it is for a plaintiff to prevail on a
substantive due process challenge to a municipal zoning decision:

> In the absence of invidious discrimination, suspect
> classifying criteria, or infringement of fundamental
> interests, our review of these quasi-legislative
> decisions is confined to whether the decisions were
> "arbitrary and capricious."  This requirement of
> substantive due process under the fourteenth amendment
> ... is met if there was *any conceivable rational basis*
> for the zoning decision.

780 F.2d at 477 (emphasis added).  The Court finds that it is "at
least debatable" that the government interest stated in the
Ordinance is legitimate.

Plaintiffs continue to maintain that even if the Ordinance's
*goals* are reasonable, that the *means* of achieving those goals are
unreasonable and unduly burdensome, and therefore go "too far."[10]

_____

[10] In *Pennsylvania Coal v. Mahon*, 260 U.S. 393 (1922), the
Supreme Court considered a challenge to a Pennsylvania statute

These means include a Permitting scheme for rental housing, a $250.00 fee, paperwork in connection with the application for a Permissive Use Permit, the length of time it takes to process the applications, and the Ordinance's enforcement mechanisms, including misdemeanor penalties for violations of the Ordinance. This permissible scope of review of local land use decisions is not so searching as to permit the Court to invalidate an ordinance on these grounds.

"The Due Process Clause does not empower the judiciary "to sit as a 'superlegislature to weigh the wisdom of legislation.'" *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124-125 (1978) (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 731 (1963)).  Rather courts defer to legislative judgments "about the need for, and likely effectiveness of, regulatory actions." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005).

The law does not permit this Court to review whether the Ordinance will in fact stabilize the rental market in St. Bernard Parish, or to question whether defendant's legislation and the

---

that prohibited the mining of coal in any manner that would cause the subsidence of property.  Justice Holmes, writing for the Court, found that the regulation constituted a taking. Recognizing that "[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law," Justice Holmes then provided that the "general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Id.* at 413, 415.

means it employs is the best way to achieve this goal, or even whether St. Bernard Parish could achieve its goal in a less restrictive manner.  On a substantive due process challenge to a zoning ordinance, the Court must uphold the Ordinance if it has a rational relationship to a legitimate government interest. *See Hidden Oaks Ltd.*, 138 F.3d at 1044; *Shelton*, 780 F.2d at 477. The Fifth Circuit has held that protecting property values is a legitimate government interest.  That is not to say that a legislative body is free to do whatever it pleases in the name of a facially legitimate government purpose.  But what the plaintiffs challenge here are the types of restrictions that pass muster everyday.  They certainly do not indicate that the whole Ordinance is so arbitrary and capricious that it is devoid of any constitutional validity under the due process clause. *Compare Jackson Court*, 874 F.2d at 1077-1079 (holding that neither moratorium on time-share developments, nor city's refusal to grant a waiver violated substantive due process) *and Texas Manufactured Housing Ass'n*, 101 F.3d at 1106 (rejecting substantive due process challenge after finding it was "at least debatable" whether restricting the placement of mobile homes effectively maintains property values, even though plaintiffs alleged that the purported rational basis for enacting Ordinance was "merely a pretext to mask arbitrary and capricious action") *and Palmieri v. Town of Babylon*, 2006 WL 1155162, at *5 (E.D.N.Y.

2006) (holding that town's rental permit law requiring property owner to obtain a rental permit for any non-owner occupied rental unit did "not even remotely raise legitimate *Ex Post Facto* Clause concerns"); *and Gilbert v. City of Cambridge*, 932 F.2d 51, 56 (1st Cir. 1991) (rejecting in the takings context claim that passage of a permit requirement, without more, infracted plaintiffs' constitutional rights), *with Berger v. City of Mayfield Heights*, 154 F.3d 621 (6th Cir. 1998) (holding that ordinance requiring vacant lot with less than 100 feet street frontage be "totally cut" to a height of eight inches was arbitrary and capricious, in violation of due process), *and Brady v. Town of Colchester*, 863 F2.d 205 (2d Cir. 1988).

In addition to charging that the criteria for obtaining a permit are "unduly oppressive" plaintiffs assert that the criteria are also unconstitutionally vague.  Specifically, plaintiffs assert that criteria number four, "The level of compliance exhibited by the property owner in maintaining other rental properties within St. Bernard Parish," is constitutionally flawed.  An ordinance is void for vagueness under the due process clause of the Fourteenth Amendment if it fails to provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited and act accordingly.  *See Grayned v. Rockford*, 408 U.S. 104, 108 (1972).  The Court finds that the ordinance taken as a whole gives applicants a reasonable opportunity to

30

know what is required of them to obtain a Permit.  This is not a case where the Parish Council is given unfettered discretion to grant or deny permits.  *Cf. Bayou Fleet, Inc. v. Alexander*, No. 97-2205, 1997 WL 625492 at * 5 (E.D.La. 10/7/97). Rather the Parish Council has four specific criteria with which it must evaluate each application.  With respect to criteria four, a reasonable person would understand that the Council would take into account the condition of other properties the applicant owned when making a decision on a pending application.  The Court is not satisfied that the ordinance is unconstitutionally vague on its face or that it invites arbitrary and discriminatory enforcement.  See *Gonzales v. Carhart*, 550 U.S. 124(2007).

       *3.   Commerce Clause*

In plaintiffs' third amended complaint, they allege that Ordinance 12-06 discriminates against out-of-state investors and violates the dormant Commerce Clause of the U.S. Constitution. (*See* Third Amend. Compl. ¶ 9.)  Plaintiffs further allege that Ordinance 12-06 constitutes a burden on out-of-state investors and that its sole objective is "local economic protectionism." (*Id.* ¶ 6.) In the Court's order denying a preliminary injunction, the Court denied plaintiffs' dormant Commerce Clause claim because they failed to offer any credible evidence demonstrating a burden on interstate commerce. (*See* R. Doc. 91.)  Plaintiffs have not made any effort to persuade the Court otherwise on

31

summary judgment.[11]

Despite plaintiffs' failure to pursue this claim on summary judgment, the Court has independently searched the record for any evidence of a dormant Commerce Clause violation.   The Court has found two identical statements in the affidavits of Dean Latusek (R. Doc. 94-2 at 7-10) and Scott McDougal (R. Doc. 80-2), asserting that when making decisions on applications at a particular Commission hearing, the Planning Commission asked "whether the owner was local or not" and applied "stricter requirements for absentee owners." The Court has considered these affidavits and finds that plaintiffs have not met their burden of showing that the Ordinance clearly discriminates against interstate commerce.   Neither does the Court find that the

_____

[11] Plaintiffs' cross-motion for summary judgment states: "Our commerce clause claim is not ripe for summary disposition. We have ordered a transcript of the July 22, 2008 hearing where the applicants were questioned about 'absentee ownership', but that transcript is not available." (R. Doc. 70-3 at 4 fn. 4.) Even if the Court were to consider this statement as a motion for continuance of summary judgment on the dormant Commerce Clause claim under Rule 56(f)it is insufficient.  As this Court stated in its order denying plaintiffs' previous Rule 56(f) motion, plaintiff must present specific facts explaining its inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut movant's showing of the absence of a genuine issue of fact." *Securities and Exchange Comm'n v. Spence & Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir. 1980).  Plaintiffs' statement in his cross-motion for summary judgment does not point to specific facts demonstrating how they will rebut defendant's claim that there is no burden on interstate commerce.  The Court therefore evaluates plaintiffs' claim on the current record.

Ordinance has an undue burden on interstate commerce.

Article I, § 8, clause 3 of the U.S. Constitution grants Congress the power to regulate commerce among the states. The dormant, or "negative," Commerce Clause limits the power of states to regulate commerce. *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 749 (5th Cir. 2006). "State regulations violate the dormant Commerce Clause by discriminating against or unduly burdening foreign or interstate commerce." *Id.* at 750. To determine whether a local law violates the dormant Commerce Clause, courts conduct a two-tiered analysis. "The first step in analyzing the constitutionality of legislation under the dormant Commerce Clause is to determine 'whether the challenged statute regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect.'" *Texas Manufactured Housing Ass'n, Inc. v. Nederland*, 101 F.3d 1095, 1101 (5th Cir. 1996) (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)). If the law affirmatively discriminates against out-of-state interests, it is subject to stricter scrutiny and will be upheld only if it is necessary to achieve a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. *Id.* at 1101; *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 100-101 (1994); *see also Piazza's Seafood World*, 448 F.3d at 749 (noting that "[r]egulations that

33

facially discriminate are virtually per se invalid.").  The term discrimination in this context "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Oregon Waste Sys.*, 511 U.S. at 99.  If the statute burdens interstate commerce incidentally, courts analyze it using the balancing test the Supreme Court set forth in *Pike v. Brace Church, Inc.*, 397 U.S. 137 (1970), and the statute "will be upheld unless the burden it imposes on interstate commerce is clearly excessive in relation to the putative local benefits." *Id.* at 142.

A clearly discriminatory law may operate in three ways: (1) by discriminating against interstate commerce on its face, *see, e.g., Granholm v. Heald*, 544 U.S. 460, 466 (2005) (striking down state laws restricting out-of-state wineries, but not in-state ones, from selling wine directly to consumers in the state); (2) by harboring a discriminatory purpose, *see, e.g., Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 352-53 (1977) (striking down facially neutral statute prohibiting state grading from appearing on apple boxes and noting evidence that it was intended to discriminate against Washington apples carrying state grades); or (3) by discriminating in its effect, *see, e.g., W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 194 (1994) (striking down facially neutral law imposing assessment on all milk sold to Massachusetts retailers because its effect on in-state producers

34

was entirely offset by the subsidy provided exclusively to in-state dairy farmers).

The Court finds that Ordinance 12-06 is not discriminatory on its face.  The language of the Ordinance does not facially discriminate against interstate commerce because it makes no distinction between property owners from Louisiana and out-of-state property owners. *Cf. Old Coach Development Corp., Inc. v. Tanzman*, 881 F.2d 1227, 1232 (3d Cir. 1989) (invalidating New Jersey regulatory scheme that imposed requirements and costs on sellers of out-of-state land which were not imposed on sellers of New Jersey land).  Because all persons who own property in St. Bernard Parish, with a few exceptions, are prohibited from renting their properties without first obtaining a Permissive Use Permit, the Ordinance does not facially confer any sort of competitive advantage upon local businesses *vis-à-vis* out-of-state competitors. *See Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493 (5th Cir. 2001) (in analyzing dormant Commerce Clause claim, courts look at the legislation's "effect on similarly situated business entities.").

Defendant has introduced evidence that the Ordinance is directed to legitimate local concerns, the maintenance of property values for *all* homeowners. *See Texas Manufactured Housing Ass'n*, 101 F.3d at 1104 n.10 ("Maintenance of property values has long been recognized as a legitimate objective of

35

local land use regulation."). Defendant further contends that the Ordinance is not discriminatory in its effect. Jerry Graves attests that, as of July 2, 2008, nine out of thirty-eight Permissive Use Permits, or nearly 25% of the permits that had been granted, had been granted to out-of-state applicants. (R. Doc. 61-10, ¶ 3.) That the Ordinance does not discriminate on the basis of geography is further demonstrated by the fact that this action includes plaintiffs who are residents of St. Bernard Parish.

Plaintiffs have not pointed to "specific facts" that create a genuine issue whether the Ordinance was enacted for the purpose of discriminating against out-of-state interests, or that it is discriminatory in effect. Cf. *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 392 (1994) (finding unconstitutional local ordinance requiring that solid waste processed or handled within town be processed or handled at town's transfer station). The only evidence plaintiffs has submitted are the statements offered in the affidavits of Dean Latusek (R. Doc. 94-2 at 7-10.) and Scott McDougal (R. Doc. 80-2) that the Commission applied "stricter requirements for absentee homeowners." This is not sufficient to create a genuine issue of fact. Even if Latusek's and McDougal's assertions are true, plaintiffs offer no facts to contradict defendant's evidence that the ordinance as applied to out-of-staters does not have a

36

discriminatory effect.  If the Commission were indeed applying "stricter requirements," the Court would expect to see an effect on the number of out-of-state denials.  Plaintiffs have shown none.  In short, plaintiffs have simply not offered specific facts that persuade the Court that there is a genuine issue of material fact that the Ordinance's clearly discriminates against interstate commerce.

Because there is no evidence before the Court that creates a genuine issue of fact whether the Ordinance clearly discriminates against interstate commerce, the Court turns to an assessment of the Ordinance under the *Pike* balancing test and considers whether the burden it imposes on interstate commerce is clearly excessive in relation to the putative local benefits.  The Court recognizes that "it is a transparently commercial action to buy, sell, or rent a house," *Groome*, 234 F.3d at 206, and further that a complete ban on renting property would have some affect on interstate commerce to the extent that out-of-state plaintiffs would not be able to rent their properties, and therefore would not be able to engage in an interstate commercial transaction. *Id.*  However, "[t]he crucial inquiry .. must be directed to determining whether [the statute] is basically a protectionist measure, or whether it can fairly be viewed as a law directed to legitimate local concerns, with effects upon interstate commerce that are only incidental." *Texas Manufactured Housing Ass'n*, 101

F.3d at 1101 (quoting *City of Philadelphia v. New Jersey*, 437
U.S. 617, 624 (1978)).  Plaintiffs have not met their obligation
to demonstrate a burden on interstate commerce at all. *See Wood
Marine Service*, 858 F.2d at 1065 ("Before the standards derived
from the Commerce Clause are applied some burden must be
established.").  First, plaintiffs have not proffered evidence
that the Ordinance prevents out-of-state homeowners from renting
their property.  Although the Ordinance requires that plaintiffs
obtain a Permissive Use Permit before renting their properties,
it does not outright prohibit rentals.  At least nine out-of-
state applicants that have applied for a Permissive Use Permit
have had them granted. (R. Doc. 61-10 at ¶ 3.)  Further,
plaintiffs have not come forward with any evidence regarding the
extent of the burden, if any, the Ordinance imposes on interstate
commerce.

Plaintiffs have previously alleged in their dormant Commerce
Clause claim that the putative purpose of the law is "illusory,"
and therefore in conducting the *Pike* balancing test, the Court
should find that the Ordinance does not have a legitimate
purpose, and therefore its burden on interstate commerce cannot
be justified.  While plaintiffs are correct that in evaluating
legislation that impacts interstate commerce, courts can consider
the language of the statute, how it operates, and how its
operation affects interstate commerce, ultimately the purpose of

38

this review is to evaluate the burden on interstate commerce.[12]
The dormant Commerce Clause is not available to challenge the
legitimacy of statutes that do not burden interstate commerce.
Plaintiffs do not connect their allegations that the Ordinance's
purpose is "illusory" with any sort of deleterious effect on
interstate commerce.

**IV.  PLAINTIFFS' OTHER PENDING MOTIONS**

    In addition to the motions for summary judgment there are
currently two additional pending motions by plaintiffs before the
Court.

        *i.  Motion to Amend the Complaint*

    In the Court's order denying plaintiffs' motion for a
continuance under Rule 56(f), (R. Doc. 92), the Court informed
plaintiffs that it would consider plaintiffs' leave to file a
fourth amended and supplemental complaint only after it had ruled
on the pending summary judgment motions.  Whether an amendment to
a complaint should be granted is within the Court's discretion.
*Overseas Inss S.A. P.A. v. U.S.*, 911 F.2d 1146, 1150 (5th Cir.
1990).  In exercising its discretion the court considers any
undue delay, dilatory motive, undue prejudice to the opposing
party and repeated failure to cure deficiencies by amendments

---

[12] Plaintiffs argue that the ordinance was enacted for the
purpose of discriminating against minorities.  This is not a
claim that ordinance discriminates against <u>interstate commerce</u>,
however, and plaintiffs have not brought a discrimination suit.

previously allowed.  *Id.*  The Court has granted plaintiffs leave to amend twice before in this lawsuit.  This latest motion to amend comes only after *both* defendant and plaintiffs filed for summary judgment.  Plaintiffs have had ample time to get their house in order before these summary judgment motions.  To grant plaintiffs' motion to amend "is potentially to undermine the [the Parish's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint. The summary judgment procedure has built-in protections against premature judgments.  A party should not without adequate grounds be permitted to avoid summary judgment by the expedient of amending its complaint." *Id.* Plaintiffs have shown no adequate grounds here, and their motion for leave to file a fourth and supplemental complaint is DENIED.

> ii.  *Motion for Attorney's Fees and Motion for*
> *Clarification of Doc. 90*

On April 17, 2008 plaintiffs filed a *Nasco* motion to sanction defendants for violating a temporary restraining order in place against St. Bernard Parish. (R. Doc. 11.)  While the motion for sanctions was pending, plaintiffs filed a motion for attorney's fees in connection with their *Nasco* motion.  (R. Doc. 54.)  On August 18, 2008 this Court granted in part and denied in part plaintiffs' *Nasco* motion and ordered sanctions against defendants in the amount of $9,000 dollars. (R. Doc. 90.)

Plaintiffs have filed a motion for the Court to clarify whether plaintiffs are also entitled to attorney's fees. (R. Doc. 110.)

Courts have the discretion to enforce their judicial orders in cases of contempt by awarding attorney's fees. *Cook v. Oschner Foundation Hospital*, 559 F.2d 270, 272 (5th Cir. 1977). To calculate a reasonable fee the Court first determines the loadstar, which is the product of the number of hours reasonably expended multiplied by a reasonable billing rate. *League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Independent School Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). "When calculating the number of hours reasonably expended on the case and assigning a reasonable hourly rate for an attorney's services, the [] court must consider the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)."[13]  *Id.*  Counsel for plaintiffs states that he spent 28.5 hours preparing the *Nasco* motion, that his "usual and customary rate is $350 per hour," and requests $9,975 dollars in

---

[13]  The *Johnson* factors are: 1) the time and labor required for the litigation; 2) the novelty and complication of the issues; 3) the skill required to properly litigate the issues; 4) whether the attorney had to refuse other work to litigate the case; 5) the attorney's customary fee; 6) whether the fee is fixed or contingent; 7) whether the client or case circumstances imposed any time constraints; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) whether the case was "undesirable;" 11) the type of attorney-client relationship and whether that relationship was long-standing; and 12) awards made in similar cases.

fees. (R. Doc. 54-3 at 2.)  Defendants dispute both the rate and the number of hours as excessive.

When determining a reasonable number of hours, the Court "must eliminate excessive or duplicative time." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  In determining whether hours were excessive, the Court examines "the results obtained" from the motion.  *Johnson*, 488 at 717-19.  Considering that eight of the allegations made by plaintiffs were baseless and three of these allegation involved *non-plaintiffs* the Court finds that Counsel's reported hours were excessive by at least 1/3 and determines that a reasonable number of hours is nineteen.

The Court next examines whether Counsel's hourly rate is reasonable.  A reasonable rate is "based on the prevailing market rates in the relevant community." *Lulac*, 119 F.3d at 1234 (citations and quotes omitted).  Plaintiffs' Counsel offers no evidence justifying his $350 per hour rate as reasonable. Defendant, however, points the Court to several cases decided by the Eastern District awarding fees in civil rights cases where the rates ranged from $150 to $195 per hour.  *See Yousuf v. UHS of De La Ronde*, *Inc.*, 110 F.Supp.2d 482 (E.D.La. 1999); *Police Ass'n of New Orleans v. New Orleans*, 951 F.Supp. 622 (E.D.La. 1997).  Given these figures and plaintiffs counsel's failure to offer any evidence justifying his rate, the Court finds that a reasonable fee in this case is $195 dollars per hour.

42

Multiplying nineteen hours by the rate of $195 dollars per hour, the Court determines that a reasonable attorney's fee is $3,705 dollars.  Plaintiffs are entitled to attorney's fees payable by defendant in the amount of $3,705 dollars, which shall be paid within 10 days of the issuance of this Order.

## V.   ALLEGATIONS OF EX PARTE CONTACTS

Plaintiffs have attached the affidavit of Dean Latusik to their "Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Further Support of Plaintiffs' Cross-Motion for Summary Judgment" testifying to the following facts:  "After the [7/22/08 St. Bernard Parish Planning Commission] hearing, affiant met with Addison Thompson regarding the proceedings and the pending litigation, as to which Thompson stated that he had '...already spoken to Judge Vance...' or words to that effect, and that the council already knew what the outcome of the pending case would be."  (R. Doc. 94-2 at 8.) Counsel for plaintiffs repeatedly references this comment throughout his many briefs filed in connection with these motions.  Suffice it to say, the Court has never spoken with Mr. Addison, nor has it spoken to any representative of St. Bernard Parish except in open court or with counsel for both parties present.  This affidavit statement is false and requires no further discussion.

43

**VI.   CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED, plaintiffs' cross-motion for summary judgment and motion for leave to file a fourth amended and supplemental complaint is DENIED, and defendants are ordered to pay attorney's fees is the amount of $3,705 dollars.

New Orleans, Louisiana, this 21st day of October, 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE